Thomas M. TEUBEL, Plaintiff-Appellant,†

v.

PRIME DEVELOPMENT, INC. and Robert B. Clemen, Defendants-Respondents,

Randy L. FIORE, Defendant.

Court of Appeals

*No. 01–1098. Submitted on briefs October 17, 2001.—Decided November 7, 2001.*

2002 WI App 26

(Also reported in 641 N.W.2d 461.)

† Petition to review denied 1-29-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John V. O'Connor, Robert I. DuMez*, and *Gino M. Alia* of *O'Connor & Willems, S.C.*, Kenosha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Joseph E. Fenzel* and *Shannon M. Whitworth* of *Domnitz, Mawicke & Goisman, S.C.*, Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. Thomas M. Teubel appeals from an order of the trial court dismissing his complaint against Prime Development, Inc. and Robert B. Clemen, and a judgment awarding Clemen $11,618.40 in costs and attorney's fees. Because the trial court based its order and judgment on factual findings that are not clearly erroneous and because the trial court exercised proper discretion in selecting the sanctions of dismissal with the award of costs and fees, we affirm.

¶ 2. This appeal requires us to examine the findings of fact and discretionary determinations made by

the trial court and relied upon in its decision to dismiss Teubel's complaint and award costs and attorney's fees to Clemen. The background of the complaint itself will be examined briefly for context.

## Background

¶ 3. These facts are undisputed. In August 1997, Teubel entered into a contract with Prime Development and Clemen for the purchase of a residential unit in "The Villas at Echo Lane" Condominium. Prior to entering into this contract, Teubel met with Clemen, who, in his capacity as a corporate officer and director of Prime Development, told Teubel that a nine-hole golf course was going to be built on sixty-seven acres adjacent to the condominium and was going to be built and run as a separate business entity at no cost to the condominium owners. Randy L. Fiore, an officer and principal owner of Prime Development, made similar representations to Teubel.

¶ 4. Teubel then purchased Unit 6A in "The Villas at Echo Lane" Condominium. In May 1998, Fiore informed Teubel that Prime Development was going to convey the sixty-seven acres adjacent to "The Villas at Echo Lane" Condominium to the condominium and was not going to build or develop a golf course. Instead, the condominium was going to build what was described as a "golf amenity" (three holes and a practice range), and this was to be maintained by the condominium owners.

¶ 5. Teubel filed suit, alleging five claims in the alternative: intentional misrepresentation, strict responsibility, false advertising, untrue statement or omission, and breach of contract/breach of warranty.

## Facts

¶ 6. Michael Rooney was hired by Teubel as a real estate expert to prepare an appraisal of Teubel's condominium with and without an adjacent nine-hole golf course. Subsequently, Rooney produced a report, describing his appraisal process and the property values as of December 14, 1999, the date of the report.

¶ 7. On the first day of trial, January 31, 2000, Rooney's report was marked as Exhibit 21 and was referenced by Teubel's attorney in his direct examination of Rooney. At the close of testimony that day, the defense attorney approached Teubel's attorney and asked if he could make a copy of Rooney's report. Teubel's attorney assented.

¶ 8. The second day of trial, February 1, 2000, began with Teubel taking the stand for cross-examination. During cross-examination, the defense attorney questioned Teubel using the photocopy he had made of Rooney's report. The defense copy of the report was subsequently marked as Exhibit 24. Later, during a recess, Teubel's attorney pointed out that the defense's copy (Exhibit 24) of Rooney's report did not correspond to Exhibit 21. When the two reports were compared, there were a number of redactions to Exhibit 21. The court excused the jury and proceeded to attempt to figure out why there were discrepancies between Rooney's report (Exhibit 21) and the defendant's copy of Rooney's report (Exhibit 24).

¶ 9. Teubel's attorney told the court that he had "whited-out" or redacted certain portions of the report before trial and before it was entered as Exhibit 21. The defense attorney said that when he had copied Exhibit 21 on the first day of trial, Exhibit 21 did not have redactions on it; however, "today" (the next day) it did.

He said that he had not done any whiting out and that Exhibit 21 had been altered sometime after he had photocopied it. The defense moved for a mistrial. At this point, Teubel's attorney gave the court a third (and unredacted) copy of Rooney's report, and stated that it was the report that the defense attorney had copied (this third copy was subsequently marked as Exhibit 25 by the court).

¶ 10. The court took possession of Exhibits 21, 24 and 25. After many more exchanges in an attempt to straighten things out, the court declared a mistrial. The court then sent Exhibits 21 and 25 to the sheriff's department for a fingerprint analysis. Subsequently, the defendant filed a motion alleging misconduct by Teubel's attorney and seeking dismissal of the action upon its merits and an award of costs and attorney's fees.

¶ 11. Over the ensuing months, the court conducted several hearings on the matter, one of which was an evidentiary hearing. On October 10, 2000, the court granted the defendant's motion, finding that the factual claims of the defendant were sustained by the evidence, that the misconduct of Teubel's attorney was profound and egregious, and that the sanctions sought were not only appropriate, but essential. A judgment awarding costs and attorney's fees to Clemen in the amount of $11,618.40 was entered on March 28, 2001. Teubel appeals.

## Standard of Review

¶ 12. Our standard of review of the trial court's findings of fact is quite limited: we may not overturn them unless we can conclude that they are clearly

erroneous. Wis. Stat. § 805.17(2) (1999–2000).[1] Under this standard, even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 644, 340 N.W.2d 575 (Ct. App. 1983). To justify reversal of a trial court's finding, the evidence for a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 249–50, 274 N.W.2d 647 (1979).

¶ 13. When the trial court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses, *Gehr v. City of Sheboygan*, 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977), and of the weight to be given to each witness's testimony, *Milbauer v. Transp. Employes' Mut. Benefit Soc'y*, 56 Wis. 2d 860, 865, 203 N.W.2d 135 (1973). This is especially true because the trier of fact has the opportunity to observe the witnesses and their demeanor. *Syvock v. State*, 61 Wis. 2d 411, 414, 213 N.W.2d 11 (1973). This court will not reverse a trial court's credibility determination unless we could conclude, as a matter of law, that no finder of fact could believe the testimony. *State v. Garcia*, 195 Wis. 2d 68, 75, 535 N.W.2d 124 (Ct. App. 1995).

¶ 14. Drawing an inference on undisputed facts when more than one inference is possible is a finding of fact which is binding upon a reviewing court. *State v. Friday*, 147 Wis. 2d 359, 370, 434 N.W.2d 85 (1989). It is not within the province of this court to choose not to

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

accept an inference drawn by a fact finder when the inference drawn is a reasonable one. *Id.* at 370–71.

¶ 15. Further, it is well established that we review a trial court's decision to impose sanctions, as well as the particular sanction it chooses, for an erroneous exercise of discretion. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991); *Kinship Inspection Serv., Inc. v. Newcomer*, 231 Wis. 2d 559, 573, 605 N.W.2d 579 (Ct. App. 1999); *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999). Accordingly, we will affirm the trial court's decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. *Garfoot*, 228 Wis. 2d at 717. The issue is not whether we, as an original matter, would have imposed the same sanction as the trial court; it is whether the trial court exceeded its discretion in imposing the sanction it did. *See Kinship*, 231 Wis. 2d at 573.

## Discussion

¶ 16. We begin by noting the trial court's inherent authority to regulate and sanction instances of suspected attorney misconduct in the course of a judicial proceeding. *Johnson*, 162 Wis. 2d at 273–74. The court's inherent powers are those "which must necessarily be used to enable the judiciary to accomplish its constitutionally or legislatively mandated functions." *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 747, 595 N.W.2d 635 (1999). Therefore, they include those powers that courts need to "maintain their dignity, transact their business . . . [or] accomplish the purposes of their existence." *Id.* at 748.

¶ 17. We hold that as part of maintaining its dignity and transacting its judicial business, a trial court properly seeks to ensure that marked exhibits are not altered. We cannot say that the trial court exceeds its discretion in characterizing the conduct of altering a marked exhibit as egregious. Dismissal with costs and attorney fees is an acceptable sanction and proper when there is a finding of bad faith or egregious misconduct. *Johnson*, 162 Wis. 2d at 274.

¶ 18. Teubel makes several arguments that we will address in order. First, Teubel claims that the proceedings were "so tainted as to mandate reversal" because the trial court investigated on its own, conducted off-the-record experiments and received ex parte communications from Clemen.[2] We disagree. We have

---

[2] With regard to the claim of ex parte communications, Teubel argues that Clemen violated SCR 20:3.5 (1999–2000) when he submitted a three-ring binder to the court and only provided Teubel with a table of contents and an incomplete version of what was submitted to the court. (The three-ring binder contained, among other things, personal thoughts, a newspaper article about the case with handwritten comments, color photographs, property appraisals, Clemen's curriculum vitae, and various advertising materials.)

While this conduct by the defense does appear to be ex parte communication in violation of the attorney's rules of professional conduct, we do not decide whether it is or is not because ultimately it does not affect our decision. We hold that this conduct did not influence the trial court's decision and therefore it was harmless error. At a hearing on December 7, 2000, the trial court specifically stated that with regard to the binder, "I didn't review this particular material." Further, at the time the trial court received the binder, it said that it was under the

examined the record thoroughly; and, even if we assume without deciding that there was some impropriety in this regard, we have determined that it was of no consequence because the trial court's fact-finding determinations were not influenced by any impropriety.

■

¶ 19. Teubel's second and third arguments are related. He claims both that the trial court erroneously exercised its discretion in its refusal to consider affidavits submitted in support of his motions for reconsideration and relief and that the trial court erred in refusing to grant relief under WIS. STAT. § 806.07(1)(h).[3] Again, we disagree. Under § 806.07(1)(h), the court is permitted to correct erroneous conclusions of law and to address issues not properly dealt with under the

---

impression that the defense had provided Teubel with a complete copy of what was submitted to the court.

Nonetheless, we consider it disturbing that the defense submitted a three-ring binder to the court and only provided Teubel with a table of contents and an incomplete version of what was submitted to the court. SCR 20:3.5 states in pertinent part:

> **Impartiality and decorum of the tribunal.** A lawyer shall not:
>
> . . . .
>
> (b) communicate ex parte with such a [judge, juror, prospective juror or other official] except as permitted by law or for scheduling purposes if permitted by the court. If communication between a lawyer and judge has occurred in order to schedule a matter, the lawyer involved shall promptly notify the lawyer for the other party or the other party, if unrepresented, of such communication. . . .

[3] WISCONSIN STAT. § 806.07(1)(h) allows a court to relieve a party or legal representative from a judgment, order or stipulation for: "Any other reasons justifying relief from the operation of the judgment."

original judgment. *Dietrich v. Elliott*, 190 Wis. 2d 816, 823, 528 N.W.2d 17 (Ct. App. 1995). Section 806.07(1)(h) requires courts to strike a balance between finality and fairness. *State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 626, 511 N.W.2d 868 (1994). Here, the court engaged in a thoughtful analysis before it refused to consider Teubel's affidavits. Teubel takes issue with the court's engaging in a new factor analysis under § 806.07(1)(b) when the motion was brought under § 806.07(1)(h). We are not persuaded that this was improper. Moreover, the court also engaged in a § 806.07(1)(h) analysis when it, by implication, weighed finality with fairness noting that "[o]ne would think that with this kind of evidence in existence that it would have been brought to the Court promptly. . . ." Then, in its discretion, the court rejected the motion for reconsideration. An appellate court's review of a trial court's decision on this type of motion is limited to the question of whether there has been an erroneous exercise of discretion. *Cynthia M.S.*, 181 Wis. 2d at 624. We find that the court made a proper effort to strike a balance between finality and fairness as is required under § 806.07(1)(h).

¶ 20. Teubel's fourth argument is that there was insufficient evidence to support the court's conclusion that his attorney made redactions to Exhibit 21 during trial. Teubel's fifth argument is that his attorney did not breach his duty of candor toward the tribunal under the supreme court rules. Our role is to search the record for evidence to support the findings of fact reached by the trial court. *Johnson v. Merta*, 95 Wis. 2d 141, 154, 289 N.W.2d 813 (1980). Much of the record revolved around the opposing attorneys pointing fingers at each other. The court was in the best position to judge

credibility. This is a case where inferences had to be drawn, one fact finder might have drawn them differently than the trial court in this case, but we are not able to say that its determination was clearly erroneous. The trial court, in a detailed discussion of twenty-five pages, related the evidence of record and concluded that Teubel's attorney made redactions to Exhibit 21 before trial and that he breached his duties under SCR 20:3.3. We need not repeat those detailed findings here, nor do we see any reason to disturb them. Because we determine that the trial court's findings are not clearly erroneous, we must accept them.

¶ 21. Finally, Teubel argues that the court's sanctions were grossly disproportionate. A trial court's decision to dismiss an action is discretionary, and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has erred in its exercise of discretion. *Johnson*, 162 Wis. 2d at 273. An erroneous exercise of discretion has not been established. Accepting the trial court's findings, we cannot say that the dismissal and award of costs and fees have no support in the record. *Id.* at 274 (where dismissal with costs and attorney fees was considered an acceptable sanction given a finding of bad faith or egregious misconduct).

*By the Court.*—Judgment and order affirmed.