Wert v. Mesesick, No. 1330-00 CnC  (Katz, J., Apr. 7, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                  SUPERIOR COURT
Chittenden County, ss.:                           Docket No. 1330-00 CnC

WERT

v.

MESESICK

ENTRY

        This personal injury matter was tried to a jury, with only a modest verdict resulting.  The central dispute at trial was over plaintiff's claim to have suffered traumatic brain injury.  Were the jury persuaded by that claim, the court would have expected a very significantly higher verdict than in fact was given.  Given this central contest of fact, the court infers that the jury was not persuaded of the brain injury, and therefore

determined to treat the case as one involving only whiplash. So viewing the verdict, it was not unreasonable on the evidence.

Plaintiff next seeks a new trial on the ground that defense counsel altered the medical record exhibit, by highlighting passages favorable to his case. That alteration consisted of attaching eleven "yellow stickies" to the margin of various pages within the looseleaf binder. Counsel was not surreptitious about this act. He specifically stated in summation that he had done so, and used the stickies to find his way around the thick exhibit during that summation. After the jury commenced its deliberations, as in all jury trials, both attorneys gathered together the exhibits, for delivery into the jury room. That was the time to remove the highlighting stickies. However, it was not done. Had plaintiff's counsel then requested their removal, the court would have directed it, over the objection of defense counsel. But no request was made. We concede that the highlighting of evidence within extensive documentation has the potential for unfair prejudice. There is, however, no perfect trial. In the context of the entire trial, we do not consider the presentation of the exhibit to the jury, with the highlighting, to be either so prejudicial as to warrant a new trial or the result of such egregious conduct by opposing counsel as to warrant sanction, whether to counsel or his client.

Plaintiff points our attention to Teubel v. Prime Development, Inc., 641 N.W.2d 461 (Wis. App. 2001), as an example of the outcome of the case being determined by counsel's alteration of a document. That case, however, involved counsel "whiting out" a portion of the exhibit, a denial of culpability, a timely objection, and a thorough factual inquiry by the trial court. The present case would have required no such factual inquiry, but the balance of the considerations deemed pertinent by the Teubel court are of a wholly different quality than what here obtains. We are not persuaded

that the highlighting by stickies, particularly in view of the extended period of jury deliberation, was in the end prejudicial.

The final point raised in seeking a new trial involves the court's refusal send a report by the government's Center for Disease Control on traumatic brain injury into the jury room. At trial, plaintiff proffered the exhibit as a "government report" and claimed admissibility under Evidence Rule 803(8). The court permitted plaintiff to use the exhibit throughout trial, in examining witnesses and arguing to the jury, but refused admission as an exhibit to be submitted to the jury room, on the ground that it was better characterized as a learned treatise. V.R.E. 803(18).

Let us start this discussion by reviewing the pertinent part of Vermont's Rule on Hearsay Exceptions for "Public records and reports":

> (A) To the extent not otherwise provided in (B), records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.
>
> (B) The following are not within this exception to the hearsay rule . . . (iv) any matter as to which the sources of information or other circumstances indicate a lack of trustworthiness.

The Vermont Rule is based on the Federal equivalent with the exception that it condenses down the Federal Rule, which is broken into three subsections. In substance, however, the Vermont and Federal Rules track quite closely. Compare V.R.E. 803(8), with 30B M. Graham, Federal Practice & Procedure § 7049, at 461, 471 (2000) (printing the text of F.R.E.

803(8), reporter's notes, congressional hearings, and discussing the structure and composition of the rule).

Under Vermont's Rule 803(8), there are three categories of "public records."  The first, what is labeled 803(8)(A) in the Federal Rule, deals with the more obvious types of government records from the activities of the office.  This include statistical reports, weather readings, treasury receipts, census data, maps, and other documents kept in a "ministerial fashion pursuant to legal authority.  See, e.g., Eastern Air Lines, Inc. v. McDonnel Douglas Corp., 532 F.2d 957, 983 n.79 (5th Cir. 1976); 30B Graham, supra, at 479 n.12 (citing United States v. Stone, 604 F.2d 922, 925 (5th Cir. 1979).  The second category, 803(8)(B) covers matter observed pursuant to a legal duty where there was a duty to report.  Here we are talking about police observations at the scene of the crime, warrants, fingerprint cards, autopsy reports, drug analysis, and other records of a specific investigation that are not routine or ministerial.  See, e.g., Manocchio v. Moran, 919 F.2d 770, 777 (1st Cir. 1990);  30B Graham, supra, at 483–86.

The third category, and the one relevant to this case, is 803(8)(C), factual findings.  Under this category, courts have recognized that the range of admissible public records may extend into the area of the medical reports and studies.  E.g. Givens v. Lederle, 556 F.2d 1341 (5th Cir. 1977) (Annual Poleomyelitis Summary of Center for Disease Control admitted to show existence of the vaccine-induced polio cases); Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 301–03 (4th Cir. 1984) (CDC epidemiological studies of toxic shock syndrome).  Just how expansive this can be is not apparent from the language of Rule 803, and initially courts varied on its interpretation.  Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 161–62

(1988).  In <u>Beech Aircraft</u>, however, the Supreme Court endorsed the expansive interpretation of the term and essentially adopted the position of advocating a willingness to recognize "evaluative reports" and the ilk that had been taken by the Senate Committee reviewing the federal rule.  <u>Id</u>.; cf. 3 M. Graham, <u>Handbook of Federal Evidence</u> §803.8, at 431 (discussing the House Committee's more narrow interpretation).

In this respect, we cannot say that the plaintiff's proffered report does not fit the technical definition of a factual finding under Rule 803(8). Yet here, as at trial, we note that the purpose that plaintiff sought to use the CDC report is more in line with the exception for a learned treatise.  Rule 803(8) does not require that the evidence be used in a specific manner, but its applicability is premised on four bases that underlie the exception. Compare F. Bennett, <u>Federal Rule of Evidence 803(8): the Use of Public Records in Civil and Criminal Cases</u>, 21 Am. J. Trial Advoc. 229, 231 (1997), with 30B M. Graham, supra, at 473.  First, the Rule assumes the records are made and kept by public officials who will perform their duties diligently and truthfully and lack any motive to falsify the information. Bennett, supra, at 231.  Second, as public documents, it is also likely that public inspection will disclose inaccuracies.  30B Graham, supra, at 473. Third, like businesses, governments process large amounts of paper and information, making a document more reliable than an official's memory. <u>Id</u>.; Bennett, supra, at 231.  Fourth, it is a waste to bring government officials into court to testify about matters that have already been accurately reported.  30B Graham, supra, at 473; Bennett, supra, at 231.

It is easy to understand how the first two categories of 803(8) reports satisfy and support these purposes.  Reports either ministerial or generated for an investigation are made by officials without a stake in the outcome.

They usually record data that they either observe or collect in a routine manner. As to the latter two concerns of Rule 803(8), it is easy to see how submitting a marriage license would be superior to having a town clerk come and testify as proof whenever a party needed it. Factual findings, on the other hand, lend themselves less to these rationales. First the information in them are generated through research and compilation, rather than through first-hand observations or ministerial methods. Second, since the authors of reports, such as plaintiff's, are experts in their field, their connection to the report is far more personal and immediate than either a disinterested official recording in a ministerial capacity or an officer conducting a routine investigation. Finally, unlike the other two categories, medical reports involve more than just facts. As in plaintiff's case, the reports collect data, analyze it, hypothesize, and draw conclusions. While these are all valid functions of a public report, each one moves the report away from being a mere record and more toward an educational tool or in other words, a learned treatise on the subject.

Learned treatises are also allowed into evidence under Rule 803(18) to examine or impeach expert witnesses. Such documents include "information from medical journal articles, a published letter to the editor of a scientific journal, safety codes, an article from a trade magazine, a pamphlet published by the American Heart Association," and most importantly to the present case "a safety report prepared for use by a governmental agency." C. Walsh & B. Rose, Increasing the Useful Information Provided by Experts in the Courtroom: a Comparison of Federal Rules of Evidence 703 and 803(18) with the Evidence Rules in Illinois, Ohio, and New York, 26 Seton Hall L. Rev. 183, 224 (1995) (citing to relevant case law). Unlike public records, however, the treatise once admitted may only be read into evidence and may not be received by

the jury as an exhibit.  V.R.E. 803(18).  This proscription on use has nothing to do with the treatise's trustworthiness, reliability,  or  bias.  C. Walsh & B. Rose, supra, at 219–20.  Rather it is intended to prevent a jury from giving a written treatise undue weight in the jury room and to prevent jurors from using a professional text without the benefit of an expert witness to explain its meaning.  Id.  In this way, the Rule allows a jury to hear the sources that expert witness used to form her opinion or that she should have used to form her opinion.  Yet, they are also safeguarded from letting that particular piece of evidence from carrying too much weight.

In this respect, Rule 803(18) is one of the more narrow exceptions to hearsay.  While any treatise dubbed learned by the court would satisfy the technical definition of the Rule, its purpose is more specifically for sources used to impeach or bolster expert witnesses.  Thus a learned treatise that is used only to establish a theory of causation and is not used in association with expert testimony, might be better handled under another provision.  E.g., Ellis, 745 F.2d at 301–03 (allowing a government report to establish causation in lieu of expert testimony).  Conversely, this Rule is best suited for a document that fits the definition of Rule 803(18) and is used for its intended purpose.  Commentators have even noted that Rule 803(18) should "operate in tandem with Rules 702 and 703," the rules for expert witness testimony.  C. Walsh & B. Rose, supra, at 231–32 (citing Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 1433 (6th ed. 1994)); see also See generally Edward J. Imwinkelried, A Comparativist Critique Of The Interface Between Hearsay And Expert Opinion In American Evidence Law, 33 B.C. L. Rev. 1, 19–35 (1991).

In this case, the court was and is now faced with a dilemma.  The plaintiff's proffered testimony qualifies under the technical requirements of

both Rule 803(8) and 803(18).  We note that the question is not whether plaintiff's report should have been admitted into evidence.  It was under Rul3 803(18).  The question is whether it should have been sent to the jury room.  Plaintiff complains that the court's failure to do so biased his case because the jury was unable to reference the evidence during their deliberations.

At trial, plaintiff proffered the CDC report as a way of bolstering his own expert witness's definition of mild traumatic brain injury and as a way of impeaching the defense's expert.  This use of the report strikes us as a clear 803(18) use.  The report was a trustworthy government document researching a medical area and reporting its results with a certain authority.  Its use was not to stand in the place of expert testimony or to establish some fact outside of that testimony but to support or attack the range of expert testimony.  In this light we see it as the better part of discretion to look at the evidence not only for its technical description but for its actual function and purpose for which it is admitted.  In this respect, we conclude that it wa properly admitted into evidence as an 803(18) learned treatise and was properly kept from the jury room during deliberations.

Finally, admission under Rule 803(18) gave the plaintiff a wide variety of options to put the evidence in front of the jury.  See, e.g., . Alexander v. Conveyors & Dumpers, Inc., 731 F.2d 1221, 1228-29 (5th Cir. 1984) (party permitted to show photographic enlargements of safety code).  Plaintiff could have put relevant sections of the report on a blackboard in front of the jury, on an overhead, incorporated it into his closing arguments, introduced charts and graphs to show the jury, or read the relevant sections into evidence.  C. Walsh & B. Rose, supra, at 221–22, n. 185, 227–28.  Far from being limited, plaintiff had an entire range of

possible ways to emphasize the importance of the CDC report to the jury. Simply, because he chose not to utilize these methods does not mean that the documents post-hoc importance should create an error.  We do not see where the absence of the CDC report from the jury room created any gap in evidence that the plaintiff could not have overcome by a more forceful presentation of the CDC report during trial.  As a result, even if the CDC report would have qualified under Rule 803(8), its absence from the jury room did not create a reversible error.

Based on the foregoing, plaintiff's motion for a new trial is denied.


Dated at Burlington, Vermont_____, 2005.


_____
Judge