COURT OF APPEALS
DECISION
DATED AND FILED

October 8, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1771-CR**

Cir. Ct. No. **2014CF2814**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

ROBERT C. WASHINGTON,

     DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Brash, P.J., Kessler and Dugan, JJ.

¶1 KESSLER, J. Robert C. Washington appeals a judgment of conviction, following guilty pleas, of one count of first-degree reckless homicide and one count of first-degree reckless injury. Washington also appeals the order denying his motion for postconviction relief. We affirm.

## BACKGROUND

¶2      On June 30, 2014, Washington was charged with one count of first-degree reckless homicide, with the use of a dangerous weapon, and one count of first-degree reckless injury, with the use of a dangerous weapon.  The charges stemmed from a shooting incident which led to the death of one of Washington's sons, Robert, and the injury of another son, W.W.[1]  According to the complaint, W.W. told police that he and his brother, Robert, were playing basketball outside of Washington's home when Washington came outside appearing to be intoxicated.  Washington interrupted the game and W.W. knocked Washington over.  The complaint further states that Washington then went back into the home and came out with a gun.  Washington fired two or three shots at W.W., striking W.W. in the leg.  Robert, who by that time began cutting the grass, heard the gunshots and ran to Washington.  Washington fired another shot, striking Robert.  When police arrived, Robert was pronounced dead at the scene.

¶3      The complaint further states that when police arrived, Washington turned himself in and told police that W.W. "bull[ies] him."  Washington told police that while Washington and Robert were playing basketball, W.W. hit Washington and started swearing at him.  Washington went back into the home, retrieved a gun, and told W.W., "I'm tired of you talking to me like that."  Washington told police that W.W. threw a basketball at him, causing the gun to go off, striking the boys.

---

[1]  Because Washington and his son Robert share the same first and last name, we refer to the defendant as "Washington," and the victim as "Robert."

¶4 Pursuant to a plea agreement, the State withdrew the penalty enhancer and Washington pled guilty to both counts. On the homicide count, the circuit court sentenced Washington to thirty-two years of initial confinement and eight years of extended supervision. On the reckless injury count, the court imposed a consecutive sentence of nine years of initial confinement and three years of extended supervision.

¶5 Washington filed a postconviction motion, arguing, as relevant to this appeal, that his trial counsel was ineffective for failing to advise him about the possibility of requesting a jury instruction for lesser-included offenses with respect to the charge of first-degree reckless homicide if Washington had gone to trial. Washington argued that "at the time of his pleas, he did not know he could request instructions for lesser-included offenses at trial. Rather, he believed that the jury would simply make an all-or-nothing determin[ation] on whether he was guilty of the offenses charged in the criminal complaint." Alternatively, Washington argued for resentencing on the grounds that counsel was ineffective at sentencing for failing to advocate for him. Washington then filed a supplemental motion alleging that he was entitled to withdraw his pleas on the grounds of newly discovered evidence. The supplemental motion alleged that W.W. acknowledged throwing a basketball at Washington just before the shooting, which was not included in W.W.'s initial statements to police.

¶6 The circuit court held a *Machner*[2] hearing. Trial counsel, Robert Taylor, testified that he did not know specifically what he discussed with Washington about lesser-included offenses, but said "we discussed every aspect of

---

[2] *See* ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

going to trial in this particular case, which included lesser-includeds [and] the possibility of going to trial." Taylor also testified that Washington "adamantly wanted to … have a plea in this matter. We talked about the trial in some detail…. But Mr. Washington admitted his guilt right away from the beginning. His whole focus was on trying to explain why he did what he did." Taylor said that he "probably" discussed the possibility of going to trial and requesting an instruction for the lesser-included offense of second-degree reckless homicide, but that Washington was insistent about accepting responsibility for his actions. Taylor also stated that he was unsure if he had notes about his conversations with Washington about lesser-included offenses, but that he spoke with Washington nineteen times at the county jail. Taylor also testified that he stressed the accidental nature of the shooting at sentencing.

¶7 W.W. testified that he threw a basketball at Washington before the shooting. He testified that he heard the gun shots immediately and his brother stating that he had been shot. W.W. stated that his brother tackled his father and screamed, "[c]all 911." W.W. said that he was never interviewed by a defense investigator to discuss his father's case.

¶8 Washington testified that Taylor never reviewed the plea questionnaire form with him, that he signed the document because Taylor told him to, and that he was unaware of the rights he was giving up by pleading guilty. Washington also stated that he told Taylor that the gun went off accidentally after W.W. threw a basketball, hitting Robert and causing Robert to fall onto Washington, but that Taylor nonetheless advised Washington to plead guilty to the offenses as charged. Washington stated that Taylor never discussed lesser-included offenses, nor did Taylor explain to Washington the possibility of requesting a lesser-included instruction had the matter gone to trial.

4

¶9    The circuit court asked Taylor to look through his files for information about Washington's allegations. Taylor wrote a letter to the circuit court in response to the court's "request[] to provide any available written additional information … regarding specific notes on the subject of discussing … lessor [*sic*] included Wisconsin Jury Instructions … with the defendant Mr. Robert C[.] Washington." The letter stated that Taylor did not have "any specific notes regarding this subject," but stated that Taylor met with Washington nineteen times and "exhaustively discussed every aspect of a possible jury trial as well as all sentencing possibilities and court proceedings." The letter also stated that Taylor asked the State about the possibility of charging Washington with lesser charges, but that the State rejected the possibilities. The letter further stated that Washington was adamant about accepting responsibility for his actions.

¶10    The circuit court denied Washington's postconviction motion. The court found that Taylor provided effective assistance by discussing all aspects of a possible jury trial, including lesser-included offenses; that Taylor met with Washington numerous times to discuss the case; that Washington did not want to go to trial; that Washington's testimony was not credible; and that Taylor's testimony was credible. The court also rejected Washington's argument that W.W.'s testimony constituted newly discovered evidence. Finally, the court stated that it considered all of the material facts of the case when rendering its sentencing decision and that a more "supportive" argument from Taylor would not have influenced its sentencing decision. This appeal follows.

**DISCUSSION**

¶11    On appeal, Washington contends that: (1) trial counsel was ineffective for failing to advise Washington about the possibility of requesting

5

instructions at trial for lesser-included offenses; (2) newly discovered evidence in the form of W.W.'s acknowledgment that he threw a basketball at Washington warrants plea withdrawal; and (3) alternatively, resentencing is warranted because counsel was ineffective at the sentencing hearing. We address each issue.

**Ineffective Assistance of Counsel**

¶12    A defendant who seeks to withdraw a plea after sentencing carries the heavy burden of establishing by clear and convincing evidence that the circuit court should permit withdrawal of the plea to correct a "manifest injustice." *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599 (Ct. App. 1991) (citation omitted). The manifest injustice test is met if the defendant was denied the effective assistance of counsel. *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

¶13    To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that he or she was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A reviewing court may dispose of a claim of ineffective assistance of counsel on either ground. *Id.* at 697. Consequently, if counsel's performance was not deficient, the claim fails and this court's inquiry is done.

¶14    We review the denial of an ineffective assistance claim as a mixed question of fact and law. *See id.* at 698. We will not reverse the circuit court's factual findings unless they are clearly erroneous. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). However, we review the two-pronged determination of trial counsel's effectiveness independently as a question of law. *See id.* at 128.

6

¶15    Washington contends that trial counsel was ineffective because counsel failed to discuss the possibility of going to trial and requesting a jury instruction on lesser-included offenses. Washington also contends that counsel essentially admitted this failure in his letter to the court, in which counsel stated that he did not have any specific notes about discussions on lesser-included offenses. We disagree.

¶16    Taylor testified at the *Machner* hearing that he discussed each and every aspect of Washington's case with him over the course of nineteen meetings, including lesser-included offenses and the possibility of going to trial. Taylor stated that Washington did not want to go trial and wanted to accept responsibility for the shootings. Although Taylor's letter to the court indicated that he did not have records of specific conversations regarding the issues Washington complained about, Taylor was certain that he provided Washington with all of the information necessary to make an informed decision about his pleas. The circuit court found Taylor's testimony credible and Washington's testimony not credible. When the circuit court makes a credibility determination, "it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. The court's determinations of a witness's credibility will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2017-18);[3] *Jacobson v. American Tool Cos., Inc.*, 222 Wis. 2d 384, 389-90, 588 N.W.2d 67 (Ct. App. 1998). A determination by the circuit court is clearly erroneous only if we conclude "as a matter of law, that no finder of fact

_____

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

7

could believe the testimony." *See Teubel v. Prime Dev., Inc.*, 2002 WI App 26, ¶13, 249 Wis. 2d 743, 641 N.W.2d 461. Because the record supports the court's determinations as to witness credibility, its findings are not clearly erroneous. Accordingly, the court properly concluded that Taylor did not render ineffective assistance.

**Newly Discovered Evidence**

¶17 Washington contends that at the time of his plea hearing, he "did not know that W.W. acknowledged throwing the basketball." Specifically, he argues that counsel did not tell Washington "about this fact," and that "neither Mr. Taylor nor any trial-level defense investigator ever interviewed W.W. to find this out." Washington contends that W.W.'s statement corroborates the version of events Washington had been asserting since his arrest—that W.W. threw a basketball in his direction, causing Robert to fall onto him and accidentally set off the gun.

¶18 For a defendant to obtain plea withdrawal based on newly discovered evidence, he or she "must establish by clear and convincing evidence that '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Edmunds*, 2008 WI App 33, ¶13, 308 Wis. 2d 374, 746 N.W.2d 590 (citation omitted). After a defendant proves these four criteria, we "should consider whether a jury would find that the newly[ ]discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt. This latter determination is a question of law." *See State v. Plude*, 2008 WI 58, ¶¶32-33, 310 Wis. 2d 28, 750 N.W.2d 42 (internal citation omitted).

¶19  However, W.W.'s statement about throwing the basketball was not newly discovered evidence.  W.W. was present at the time of the shooting incident and gave a statement to police.  Whether or not W.W. threw a basketball at his father was known to W.W. and Washington at the time of the incident.  Moreover, Washington consistently maintained that W.W. threw a basketball in his direction, ultimately causing the gun to discharge.  W.W.'s ultimate corroboration of Washington's defense is not newly discovered evidence—it is simply a different version of events.

**Resentencing**

¶20  As an alternative to plea withdrawal, Washington contends that he is entitled to resentencing on the basis of ineffective assistance of trial counsel.  We disagree.  As stated, to establish an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that he or she was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687.  If we conclude that the defendant has failed to prove one prong, we need not address the other prong.  *See id.* at 697.

¶21  At sentencing, Taylor stated:

> This is a very, very, very tragic incident.  And Mr. Washington is responsible for that.  There's no two ways about it.  I don't care what the hell he says why he did it.  It's totally unacceptable.
>
> ….
>
> I submit to the Court that Mr. Washington is a threat to no one but himself in this particular case and he's going to be removed shortly.  But I think for a just sentence, there's a message that needs to be sent.…  [I]t's about the people who's handling the guns in this case.
>
> ….

> With respect to a sentencing recommendation, Judge, I think the PSI writer tried to document it as best she could with respect to the factors that the Court must use that would help the Court consider.
>
> Like the [State], I'm going to punt.

¶22 Assuming, without deciding, that trial counsel's comments at sentencing constituted deficient performance, we conclude that Washington was not prejudiced by the deficiency. To demonstrate prejudice, Washington must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* Washington has not met this burden.

¶23 Postconviction, the circuit court found that even if counsel had been more "supportive," "there is not a reasonable probability that the court would have imposed anything other than the sentences it did impose." The court stated that it considered the facts of the case, the PSI, Washington's statement at sentencing, and Washington's wife's statement at sentencing. The court noted that it "did not have to accept [Washington's] 'gun just went off' version for purposes of sentencing." Therefore, counsel did not render ineffective assistance because even if he had advocated more strongly for Washington, the sentence would have remained the same. *See State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (Counsel is not ineffective for failing to make meritless arguments.).

¶24 For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.