**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 22, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2021AP815**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015FA421

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE CONTEMPT PROCEEDINGS IN
IN RE THE MARRIAGE OF:

SUSAN KATHLEEN HADDORFF,

  PETITIONER-RESPONDENT,

 V.

BENJAMIN FROYEN HADDORFF,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Washington County: SANDRA JO GIERNOTH, Judge. *Affirmed.*

¶1      REILLY, J.[1] Benjamin Froyen Haddorff appeals from the circuit court's order denying his motion for contempt, alleging that Susan Kathleen Haddorff, his ex-wife, failed to abide by the placement order concerning the parties' minor children.  The court determined that while Susan's actions were intentional, pursuant to WIS. STAT. § 767.471(5)(b), she did not act unreasonably.  For the reasons that follow, we affirm the circuit court's order.

*Background*

¶2      The parties were married in 2005, and a judgment of divorce was granted on August 11, 2017.  The parties share five minor children and were granted joint legal custody and equal shared physical placement of the children.  The custody and placement orders were contained in a Partial Marital Settlement Agreement (the agreement).  The agreement is detailed, reflecting, as the circuit court recognized, the parties' "acrimonious nature" and "a product of what is obviously and still remains a contentious coparenting relationship."

¶3      At issue in this case was the holiday placement schedule between approximately December 18, 2020, and January 3, 2021.  The agreement contained provisions for both the regular placement schedule as well as a holiday placement schedule.  According to the agreement, "[t]he holiday schedule shall supersede    the    regular    placement    schedule    which    shall    resume    as

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

though uninterrupted after completion of the holiday." It also provided, however, that

> [i]n the event a holiday placement would result in a parent having placement with the children for three (3) weekends in a row, the weekend preceding the holiday shall be switched. It is the intention of the parents that neither parent have placement of the children more than two (2) consecutive weekends in a row and that they keep their normal weekend rotation.

¶4    It was in the "spirit" of this "three weekend" provision[2] that Susan requested, on December 14, 2020, that the children remain with her the weekend of December 18-20 "to make the holiday schedule equal time for the kids to be with me and you."[3] Benjamin denied that request, stating, "I don't care what you think. Child facts only. Follow the MSA. Take your pills." Susan then asked, "Are you open to changing the winter break schedule as follows to even out the placement time?" And her request was changed to include January 2-4, 2021. Benjamin responded, "That doesn't work for me." He sent another message denying her request approximately a week later.

¶5    As Susan was unable to resolve this scheduling issue with Benjamin, she contacted the parties' parenting coordinator.[4] Susan was to exchange the

---

[2] It is Benjamin's position, based on the language of the marital settlement agreement (MSA), that the "three weekend" rule did not apply, as "[a] full weekend is defined by the MSA as '9am Friday to 9am Monday,'" and Susan was to exchange the children on Saturday, January 2 at 9:00 a.m.

[3] The parties communicated exclusively through the Our Family Wizard application.

[4] Under the MSA, the parenting coordinator was appointed for a two-year term from March 28, 2017, to March 28, 2019. After that time, Benjamin argues, the parenting coordinator's "authority ceased." Both Benjamin and Susan testified, however, that the parties had used the services of the parenting coordinator after the expiration of the original term and split the costs of the coordinator's services. Thus, as Susan argued, she "believed it was appropriate to engage the parenting coordinator again."

children with Benjamin on January 2, 2021, at 9 a.m., but, after speaking with the parenting coordinator, Susan kept the children until January 3 at 3:00 p.m. She testified that "when I told [Benjamin] I would be following the recommendations [of the parenting coordinator] and keeping the kids, I did also offer him an extra day of mine the following week to which he never even bothered to respond to the message." When Susan did not meet Benjamin at the agreed location on January 2, Benjamin contacted the Washington County Sheriff's Department, twice. Deputy Andrew Graper responded, reviewed the agreement, and spoke with Susan by phone. No criminal charges were filed against Susan.

¶6      On January 28, 2021, Benjamin filed an Order to Show Cause for Contempt and for Enforcement of Physical Placement Schedule pursuant to WIS. STAT. § 767.471, seeking "make-up periods of placement" and costs and attorneys fees. At the motion hearing, Benjamin, Susan, and Graper testified. After reviewing the evidence, the circuit court denied Benjamin's motion, finding that Susan's actions were not unreasonable under the circumstances. Benjamin appeals.

*Discussion*

¶7      Benjamin argues that the circuit court "misused its discretion" by finding that Susan's actions, while intentional, were not unreasonable.[5] His

---

[5] Throughout his briefing, Benjamin argues that WIS. STAT. § 948.31 is applicable under the circumstances, stating that "[g]iven that Susan's conduct violated [§] 948.31, which is a felony, the trial court should not have found that her conduct was also reasonable," as "[r]easonableness is not an element" of § 948.31. Section 948.31 is a criminal statute, and, more importantly, one that Susan was not charged with nor convicted of. Further, Benjamin filed his motion for contempt pursuant to WIS. STAT. § 767.471. Benjamin provides no statutory or case law authority to suggest that § 948.31 is used to apply § 767.471.

(continued)

motion was filed pursuant to WIS. STAT. § 767.471, which provides in relevant part:

> If at the conclusion of the hearing the court finds that the responding party has intentionally and unreasonably denied the moving party one or more periods of physical placement or that the responding party has intentionally and unreasonably interfered with one or more of the moving party's periods of physical placement, the court:
>
> 1. Shall do all of the following:
>
> a. Issue an order granting additional periods of physical placement to replace those denied or interfered with.
>
> b. Award the moving party a reasonable amount for the cost of maintaining an action under this section and for attorney fees.
>
> 2. May do one or more of the following:
>
> a. If the underlying order or judgment relating to periods of physical placement does not provide for specific times for the exercise of periods of physical placement, issue an order specifying the times for the exercise of periods of physical placement.
>
> b. Find the responding party in contempt of court under ch. 785.[6]
>
> c. Grant an injunction ordering the responding party to strictly comply with the judgment or order relating to the award of physical placement. In determining whether to

---

Benjamin's citation to *State v. Campbell*, 2006 WI 99, 294 Wis. 2d 100, 718 N.W.2d 649, is equally inapplicable, as the defendant in that case was *convicted* of the criminal offense of parental interference with custody of a child, and the question was whether "the circuit court err[ed] in preventing [the defendant] from collaterally attacking the validity of the family court's custody order in his criminal trial, even though [the defendant] alleged that the order was obtained by fraud." *Id.*, ¶¶1, 3.

[6] WISCONSIN STAT. § 785.01 provides that "'[c]ontempt of court' means intentional … [d]isobedience, resistance or obstruction of the authority, process or order of a court." Sec. 785.01(1)(b).

> issue an injunction, the court shall consider whether alternative remedies requested by the moving party would be as effective in obtaining compliance with the order or judgment relating to physical placement.

Sec. 767.471(5)(b). Thus, the plain language of the statute provides that the remedies are available to Benjamin only if the circuit court found that Susan "intentionally and unreasonably" denied or interfered with one or more periods of Benjamin's physical placement. *See id.*

¶8    We will not overturn a circuit court's factual findings unless those findings are clearly erroneous. *Teubel v. Prime Dev., Inc.*, 2002 WI App 26, ¶12, 249 Wis. 2d 743, 641 N.W.2d 461.

> [W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.

*Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 644, 340 N.W.2d 575 (Ct. App. 1983). Further, it is well established that we review the circuit court's use of its contempt powers for an erroneous exercise of discretion. *City of Wis. Dells v. Dells Fireworks, Inc.*, 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995). "We look for reasons to sustain a discretionary ruling." *Board of Regents-UW Sys. v. Decker*, 2014 WI 68, ¶19, 355 Wis. 2d 800, 850 N.W.2d 112.

¶9    We conclude that the circuit court applied the proper legal standard pursuant to the statute and its findings of fact were not clearly erroneous. After correctly recounting the standard under which it was to apply the evidence, the circuit court found that it was "undisputed that [Susan] retained [the children] in excess of her period of placement from January 2nd at 9:00 a.m. until January 3rd

at 3:00 p.m." According to the court, "[c]learly [Susan] made this decision because she was not satisfied by the communication that had occurred previously relative to the December 18th weekend … because of this three weekends in a row provision that is in [the agreement]."

> The evidence is that she sought out the assistance of the parenting coordinator[7] who was no longer a binding resource, no longer a resource that was binding upon the parties to use, but the undisputed evidence is that the parenting coordinator had been consulted since the expiration of the [term in the MSA] by [Benjamin] in addition to [Susan] doing so on this occasion. I don't find that to be unreasonable in the context of it.

> The fact that they did not amend their agreement, I don't find that to be persuasive. The fact that they didn't have any additional agreement put forth on that particular issue, I don't find that to be persuasive either. They clearly used this parenting coordinator as a resource at least prior to this, so such that it is not shocking that [Susan] chose to do so on this particular occasion.

Benjamin argued at the hearing that instead of using the parenting coordinator, Susan should have sought Family Court Mediation Services per the terms of the MSA. The court explained that it understood Benjamin's argument that Susan's remedy was mediation, but it observed that "in an effort to decide whether to find a person in contempt, there is an equity assessment that the [c]ourt has to make" and "[t]he practical reality of [using mediation] is that it's not going to result in a resolution before the days actually come." The court ultimately concluded that "[i]n the context of the totality of this presentation, the evidence that is before me,

---

[7] On appeal, Benjamin argues that the circuit court relied on inadmissible hearsay to find that Susan consulted the parenting coordinator, despite receiving no testimony from the parenting coordinator. We disagree. Benjamin made a hearsay objection during the hearing, and the court agreed. Susan then limited her testimony not to what the parenting coordinator told her, but rather the steps Susan herself took based on that counsel.

I do not find that this meets the definition of intentional and unreasonable behavior. It is intentional. I just don't think it is unreasonable." The court went on to observe

> that there is a lot of acrimony between the parties that they are contentious, that they very much protect their individual placement time, and they are entitled to protect their placement time. It is important that the children have meaningful relationships with both parents. But there is a level of unreasonableness going on here, and I don't think that [Susan's] conduct in the context of this particular matter meets the definition of unreasonableness on how she addressed this issue.

¶10 Benjamin asks us to set aside the discretionary decision of the circuit court that Susan's actions were not unreasonable. While Benjamin's arguments refer us to a criminal statute and generally express disagreement with the decision of the court, he fails to explain how the court's findings were *clearly* erroneous. It is clear from the evidence that the parties disagreed regarding placement based on the terms of the agreement, which Susan attempted to resolve directly with Benjamin. Given that both parties had sought counsel of the parenting coordinator in the past, it was not unreasonable for Susan to do so again. The court commented on the obvious acrimony between the parties and reiterated that "[i]t is important that the children have meaningful relationships with both parents," a responsibility that both parties share equally. The family court is a court of equity, and, as such, it is able "to make a flexible and tailored response to the needs of a particular" couple. *Lutzke v. Lutzke*, 122 Wis. 2d 24, 36, 361 N.W.2d 640 (1985). Under the circumstances and based on the record before us, we affirm, as the court's findings were not erroneous. We uphold the discretionary decision of the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.