2024 WI App 47

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 18, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No. 2023AP1400**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV121

**IN COURT OF APPEALS**
**DISTRICT IV**

---

PAULINE BUCHHOLZ, AS TRUSTEE OF THE TRUST AGREEMENT,

    PLAINTIFF-RESPONDENT,

  V.

STEVEN K. SCHMIDT,

    DEFENDANT-APPELLANT,

LINDA M. SCHMIDT,

    DEFENDANT.

---

APPEAL from a judgment of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed in part; reversed in part, and cause remanded with directions*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

¶1     KLOPPENBURG, P.J.  In this appeal, Steven Schmidt challenges multiple pretrial rulings by the Dodge County circuit court and the judgment entered by the court after a jury trial.[1]  All of Schmidt's challenges involve drainage issues on the rural properties that Schmidt and Buchholz own, which are located on either side of a road.  Schmidt's challenges also concern two contracts between the parties, which we refer to as "the Farm Lease Agreement" and "the Drain Tile Agreement."

¶2     The parties filed claims and counterclaims sounding in nuisance, trespass, easement, and contract law, relating primarily to a drainage tile located on Schmidt's property.  The drainage tile (also referred to as a "drain tile") was a subsurface 12-inch diameter concrete pipe that was buried on Schmidt's property at all times relevant to this appeal.  It ran from the end of a culvert that passed underneath the road between the parties' properties, where it drained water from Buchholz's property, continued through Schmidt's property, and discharged water from both Schmidt's property and Buchholz's property into a drainage way.

¶3     Schmidt argues that the circuit court erred in issuing three orders: one denying Schmidt's motion for summary judgment on Buchholz's claims that Schmidt created a nuisance in connection with the drainage tile and granting Buchholz's motion for summary judgment on both Buchholz's breach of contract claim and Schmidt's breach of contract counterclaim; one dismissing Schmidt's

---

[1] This action was commenced by Pauline Buchholz's spouse, Ben Buchholz, who passed away during the course of the circuit court proceedings.  We generally refer to the original plaintiff in the circuit court, Ben Buchholz, and to the respondent on appeal, Pauline Buchholz as Trustee of the Trust Agreement, as Buchholz.  The defendants to the action are Steven Schmidt and his spouse, Linda Schmidt.  Only Steven Schmidt appeals, and we generally refer to the defendants collectively and the appellant individually as Schmidt.

remaining counterclaims as a sanction; and one, incorporated in the judgment on the verdict, relating to the jury's finding that Buchholz holds a prescriptive easement over the drainage tile.

¶4    Regarding the summary judgment order, Schmidt argues that WIS. STAT. § 823.08 (2021-22) (the "Right to Farm Law") bars Buchholz's nuisance claims, and that the circuit court erred in deciding that the statute does not apply based on the court's determination that Schmidt's alleged nuisance-creating farmland drainage activity was not an agricultural use or practice within the meaning of the statute.[2]  Schmidt also argues that the court erred when it granted summary judgment in Buchholz's favor on Buchholz's claim that Schmidt breached the Drain Tile Agreement.  Specifically, Schmidt argues that he was excused from performing under the Drain Tile Agreement because it is ambiguous and there are issues of material fact as to a predicate for his performance, namely Buchholz's compliance with the Farm Lease Agreement.  Schmidt argues that the court disregarded those same issues of material fact when it granted summary judgment in Buchholz's favor dismissing Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement.

¶5    We reach the same result as the circuit court on the issue of whether the Right to Farm Law bars Buchholz's nuisance claims—it does not—but for different reasons.  We conclude that Schmidt's alleged nuisance-creating farmland drainage activity was an agricultural practice within the meaning of the statute. But we also conclude that Schmidt fails to argue that he presented evidence

_____

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

showing that he met a separate predicate for protection from Buchholz's nuisance claims under the Right to Farm Law. Specifically, he fails to argue that he presented evidence showing that the land on which he conducted the alleged nuisance-creating farmland drainage activity—land that he now owns—was in agricultural use (farming) without substantial interruption, *before* Buchholz began the use of his property (farming) that Buchholz alleges was interfered with by that activity. Therefore, the court properly denied Schmidt's motion for summary judgment seeking to dismiss those claims. Separately, we conclude that Schmidt fails to support the proposition that the ambiguity he asserts in the Drain Tile Agreement excuses him from performance of the unambiguous terms of that agreement. Schmidt also fails to show that there are disputed material facts as to whether Buchholz breached the Farm Lease Agreement. Therefore, the circuit court properly granted summary judgment in Buchholz's favor on Buchholz's claim that Schmidt breached the Drain Tile Agreement and dismissed Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement.

¶6 Regarding the order of dismissal as a sanction, Schmidt argues that the circuit court acted contrary to the law and the facts when it dismissed Schmidt's remaining counterclaims as a sanction for his failure to comply with an order requiring him to pay Buchholz's costs resulting from a trial continuance that Schmidt requested. We conclude that the court properly exercised its discretion when it dismissed these counterclaims as a sanction.

¶7 Regarding the order incorporated in the judgment on the verdict, Schmidt argues that the order includes terms that exceed the scope of the jury's verdict finding that Buchholz holds a prescriptive easement over the drainage tile on Schmidt's property. We conclude that the order incorporated by the judgment on the verdict contains two terms that exceed the scope of the jury's verdict

4

finding that Buchholz holds a prescriptive easement, and for which Buchholz identifies no factual or legal basis.

¶8      Accordingly, we affirm in part, reverse in part, and remand to the circuit court with directions to amend the easement order to remove the two terms that exceed the scope of the jury's verdict.

## BACKGROUND

¶9      The following facts are undisputed.  Buchholz and Schmidt own properties in Dodge County that they and their predecessors in title have used for farming.

¶10      In May 2017, the parties entered into a contract (the "Farm Lease Agreement") under which Buchholz agreed to rent "90+/- tillable acres" of the Buchholz farm to Schmidt in exchange for three payments of $6,500 each.  The Farm Lease Agreement covered the remainder of 2017 and all of 2018.

¶11      In sworn statements both parties testified that they used a subsurface drain tile buried on the Schmidt property to drain the farmland on their respective properties.  Around the beginning of 2019, this drain tile on the Schmidt property was damaged.  On January 25, 2019, Buchholz and Schmidt entered into a contract to replace the damaged drain tile (the "Drain Tile Agreement"), which makes references to the parties' separate obligations under the Farm Lease Agreement.  The Drain Tile Agreement states the following:

> I, Ben Buchholz, agree to deduct $2,000 from the 3rd payment of 2018 $6500 farm land rent to help cover [the] cost of replacing tile that was damaged on Steve Schmidt Property that drains my land.  Steve Schmidt agrees to replace the tile within one year, or owes me $2,000.

5

> Ben agrees to pay [f]or 1 12" Line, $2,000 is down payment.

¶12     Schmidt did not replace the damaged drain tile within one year, as promised. Both parties' farms subsequently experienced significant flooding and the deposit of debris, for which each party blamed the other. Schmidt also did not pay Buchholz the $2,000 that Schmidt withheld from the third rent payment.

¶13     Buchholz sued Schmidt in February 2020, making the following claims: (1) Schmidt breached the Drain Tile Agreement by not replacing the drain tile within one year and by retaining the $2,000 that had been deducted from the third rent payment that Schmidt owed to Buchholz; (2) Buchholz is the "rightful holder of a [prescriptive] easement to use and occupy the Drain Tile located on the Schmidt Property"; (3) Schmidt engaged in conduct relating to the damaged drain tile (Schmidt's "farmland drainage activity") that diverted water and debris onto the Buchholz property so as to negligently and intentionally create and maintain a private nuisance; and (4) Schmidt's farmland drainage activity constitutes a trespass.[3]

¶14     Schmidt answered and alleged the following counterclaims: (1) the Drain Tile Agreement is void as a matter of public policy; (2) Buchholz breached the Farm Lease Agreement by failing to "provide" "90+/- tillable acres"; and (3) Buchholz engaged in conduct that diverted water and debris onto Schmidt's property, which constituted both a negligent and intentional private nuisance and a trespass.

---

[3] Buchholz filed an amended complaint in April 2020, which is the operative complaint for purposes of this appeal. We note that the jury entered verdicts on Buchholz's private nuisance claims as well as on a public nuisance claim, and that the jury found against Buchholz on the public nuisance claim.

¶15     After the parties submitted their pleadings, the circuit court issued the three orders pertinent to this appeal, which we summarize in chronological order.

¶16     The first is the circuit court's August 2021 order on the parties' cross-motions for partial summary judgment. The court denied Schmidt's motion seeking dismissal of Buchholz's nuisance claims as barred under the Right to Farm Law. The court ruled that the Right to Farm Law does not bar Buchholz's nuisance claims because Schmidt's farmland drainage was not an "agricultural practice" as that term is defined in WIS. STAT. § 823.08(2)(a). The court granted Buchholz's motion for summary judgment on his breach of contract claim, determining that Schmidt breached the unambiguous terms of the Drain Tile Agreement as a matter of law. The court also determined that there are no genuine disputes of material fact concerning Schmidt's defenses based on Buchholz's alleged breach of the Farm Lease Agreement. In the absence of disputes of material fact on that issue, the court also dismissed Schmidt's counterclaim alleging that Buchholz breached the Farm Lease Agreement.

¶17     The second order at issue was entered in February 2022. The circuit court granted Buchholz's motion to dismiss Schmidt's remaining counterclaims as a sanction for Schmidt's failure to comply with a prior court order that gave Schmidt thirty days to pay, or file a motion objecting to, the costs that Buchholz incurred due to a trial continuance that Schmidt requested. This dismissal order was followed by a July 2022 order denying, after a hearing, Schmidt's motion for relief from the dismissal order. At the hearing on Schmidt's motion for relief, the court explained that the sanction of dismissal was warranted because Schmidt did not inform the court of his reasons for not being able to timely pay the costs or file a motion; Schmidt did not request an extension of the thirty-day deadline based on

7

those reasons; Schmidt did not otherwise contact the court, either before the payment or motion were due or in response to Buchholz's motion to dismiss that was filed shortly after the due date; and it would be unfair to Buchholz to allow Schmidt to repeatedly engage in tardy conduct in the litigation and cause delay without penalty.

¶18     The third order at issue is the circuit court's December 2022 judgment, which incorporates an order on the verdict on Buchholz's prescriptive easement claim. The judgment was entered after the jury found in favor of Buchholz on the prescriptive easement, private nuisance, and trespass claims, and awarded Buchholz damages on the latter two claims. As to the jury's prescriptive easement verdict, the court entered a judgment that incorporates a "Drainage Easement Order." The order creates an easement "over, under and across that part of the Schmidt Parcel within which the Drainage System will be located, and to provide for the operation and maintenance of the Drainage System." The easement is over the pre-existing damaged drain tile on Schmidt's property. The order imposes obligations on both parties regarding the easement.

¶19     Schmidt appeals.[4]

---

[4] The parties' briefs do not comply with RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule has recently been amended, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), and the reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

## DISCUSSION

### I. Summary judgment rulings

¶20    Schmidt argues that the circuit court erred in denying Schmidt's motion for partial summary judgment seeking dismissal of Buchholz's nuisance claims. He further argues that the court erred in granting Buchholz's motion for partial summary judgment in Buchholz's favor on both Buchholz's breach of contract claim and Schmidt's breach of contract counterclaim.

¶21    We review summary judgment de novo, using the same methodology as the circuit court. ***R.W. Docks & Slips v. State***, 2001 WI 73, ¶12, 244 Wis. 2d 497, 628 N.W.2d 781.  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact" and a party is entitled to judgment as a matter of law.  ***Id.***; WIS. STAT. § 802.08(2) (summary judgment to the moving party) and (6) (summary judgment to the non-moving party).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." ***Baxter v. DNR***, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) (emphasis and quoted source omitted).

¶22    Our review of the circuit court's summary judgment rulings involves statutory interpretation presents an issue of law that we also review de novo. ***Clean Wis., Inc. v. DNR***, 2021 WI 72, ¶10, 398 Wis. 2d 433, 961 N.W.2d 611. We conduct a plain meaning analysis that begins with the statutory language. *See* ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("Judicial deference to the policy choices enacted into law

by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language."). The words used by the legislature are to be given their "common, ordinary, and accepted meaning," *id.*, ¶45, "that proper grammar and usage would assign them." *State v. Arberry*, 2018 WI 7, ¶19, 379 Wis. 2d 254, 905 N.W.2d 832 (citation omitted). In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Kalal*, 271 Wis. 2d 633, ¶46. "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.'" *Id.* (quoting *Bruno v. Milwaukee County*, 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656).

¶23     Our review of the circuit court's summary judgment rulings also involves the interpretation of contracts, which are also rulings that we review de novo. *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987). "The general rule as to construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole." *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶38, 362 Wis. 2d 258, 864 N.W.2d 83. We interpret the language of a contract "according to its plain or ordinary meaning, … consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Id.*, ¶37 (citation omitted). In other words, "[w]e interpret contracts to give them common sense and realistic meaning." *Id.*, ¶38 (citation omitted). When a statutory term is not defined in the statute, "[a] dictionary may be utilized to guide

10

the common, ordinary meaning of words." ***Noffke ex rel. Swenson v. Bakke***, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156.

¶24 If a contract provision is unambiguous, meaning that it is susceptible of just one reasonable interpretation, we will construe it consistently with that unambiguous meaning. *See **Town Bank v. City Real Est. Dev., LLC***, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. If a contract provision is ambiguous, we will construe the provision against the drafting party if there is a clear drafting party. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15. Whether a contract is ambiguous presents an issue of law. ***Borchardt v. Wilk***, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

### A. Whether the Right to Farm Law bars Buchholz's nuisance claims

¶25 Schmidt argues that he is entitled to summary judgment dismissing Buchholz's nuisance claims because Schmidt's farmland drainage activity may not be found to be a nuisance under the Right to Farm Law. WIS. STAT. § 823.08. The legislative purpose of the statute is, in part, as follows:

> The legislature finds that development in rural areas and changes in agricultural technology, practices and scale of operation have increasingly tended to create conflicts between agricultural and other uses of land. The legislature believes that, to the extent possible consistent with good public policy, the law should not hamper agricultural production or the use of modern agricultural technology. The legislature therefore deems it in the best interest of the state to establish limits on the remedies available in those conflicts which reach the judicial system.

Sec. 823.08(1).

¶26 The Right to Farm Law defines two categories of agricultural activities that both qualify for protection from nuisance claims: agricultural uses and agricultural practices. WIS. STAT. § 823.08(3). The potentially protected

activity of "agricultural use" is defined as any of a list of "activities conducted for the purpose of producing an income or livelihood," including, pertinent here, "crop or forage production." WIS. STAT. §§ 823.08(2)(b) and 91.01(2)(a)1. And the potentially protected activity of "agricultural practice" is "any activity associated with an agricultural use." Sec. 823.08(2)(a).

¶27 The Right to Farm Law requires the dismissal of a claim that purports to identify an agricultural use or an agricultural practice as a nuisance if both of the following two criteria are satisfied:

> 1. The agricultural use or agricultural practice alleged to be a nuisance is conducted on … land that was in agricultural use without substantial interruption before the plaintiff began the use of property that the plaintiff alleges was interfered with by the agricultural use or agricultural practice.
>
> 2. The agricultural use or agricultural practice does not present a substantial threat to public health or safety.

WIS. STAT. § 823.08(3)(a).

¶28 Thus, a defendant seeking to show that the defendant may not be found liable for creating a nuisance must prove each of three predicates under the Right to Farm Law. First, the plaintiff's claim is for a nuisance that is an agricultural use or practice. Second, under subpart (3)(a)1., as pertinent here, the land on which the alleged nuisance occurred was in agricultural use, without substantial interruption, before the plaintiff began the particular use of the property that the plaintiff claims was interfered with by the defendant's agricultural use or practice. Third, under subpart (3)(a)2., the defendant's agricultural use or agricultural practice alleged to be a nuisance does not present a substantial threat to public health or safety. WIS. STAT. § 823.08(2) and (3).

¶29    As we explain in greater detail below, we conclude that it is undisputed that Schmidt has met the first predicate—that the alleged nuisance at issue, his farmland drainage activity on his land, was an agricultural practice—because it was associated with the agricultural use of crop production.  We further conclude that the case relied on by the circuit court to rule to the contrary, *Timm v. Portage County Drainage District*, 145 Wis. 2d 743, 429 N.W.2d 512 (Ct. App. 1988), does not compel such a ruling.  However, we also conclude that Schmidt fails to show that he developed the evidence relevant to meet the second predicate—that what is now his land was in agricultural use, without substantial interruption, before Buchholz began using his property for the farming that Buchholz alleges was interfered with by Schmidt's activity.  Therefore, we need not and do not address the third predicate.[5]   Accordingly, we conclude that Schmidt fails to show that the Right to Farm Law bars Buchholz's nuisance claims based on Schmidt's farmland drainage activity.

¶30    We briefly recap the pertinent background before proceeding with our analysis of whether Schmidt has met the first and second predicates under the Right to Farm Law, to support his defense that he may not be found liable for creating a nuisance.

---

[5] Since Schmidt was required to show all of the predicates necessary to establish a defense under the Right to Farm Law, we could limit our discussion to our conclusion that he fails to meet the specific timing requirement in WIS. STAT. § 823.08(3)(a)1.  But we choose to address additional issues briefed by the parties in the interest of clarifying the law in this area, in part because of the prevalence of farmland drainage activities around the state and in part because of the increasing intensity of some precipitation events.  *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 683 (1998) (explaining that, when one issue is dispositive, an appellate court may consider additional issues that have been briefed by the parties and are likely to recur, to conserve judicial resources and clarify important points of law).

¶31    Buchholz's nuisance claims are based on Schmidt's alleged farmland drainage activity regarding the subsurface drain tile that was at relevant times located on Schmidt's land and that Buchholz used to drain his property. Specifically, Buchholz alleged that, in late fall 2018 or early 2019, Schmidt "disconnected" the drain tile on Schmidt's land, that Schmidt constructed a berm and installed a separate pipe on Schmidt's land that drained to a waterway on Schmidt's land, and that both sets of actions caused water and debris to be diverted onto Buchholz's property so as to interfere with Buchholz's use of his property for farming.

¶32    Schmidt moved for summary judgment seeking the dismissal of Buchholz's nuisance claims under the Right to Farm Law. Schmidt argued that his alleged nuisance-creating farmland drainage activity was either an agricultural use or an agricultural practice that did not present a substantial threat to public health or safety, and was, therefore, protected from nuisance liability under the Right to Farm Law.

¶33    The materials submitted by the parties in support of and in opposition to Schmidt's motion for summary judgment include Schmidt's affidavit and deposition, in which he swore to the following. Buchholz took certain actions on Buchholz's property that increased the flow of water discharged onto Schmidt's land. Schmidt installed a nine-inch drainage pipe and a berm at a different location from the drain tile to "regulat[e] the increased flow of water from the Buchholz Property onto the Schmidt Property in order to mitigate damage to [the Schmidt] farmland and to protect [Schmidt's] ability to successfully cultivate crops on [the Schmidt] property." The nine-inch drainage pipe is not connected to the drain tile on Schmidt's land that drains Buchholz's

14

property. The drain tile was plugged up with debris at one end, and Schmidt "essentially disconnected" it in July 2019.

¶34 The circuit court denied Schmidt's motion. The court concluded that the Right to Farm Law could not apply here because Schmidt's farmland drainage could not qualify as an agricultural use under WIS. STAT. § 823.08(3)(a), and was not an agricultural practice pursuant to *Timm*, 145 Wis. 2d 743.[6]

*1. Whether Schmidt has met the first predicate, that his alleged nuisance-creating farmland drainage activity was an "agricultural practice"*

¶35 As stated, one predicate for protection under the Right to Farm Law involves the concept of agricultural practices, which the statute defines as "any activity associated with an agricultural use." WIS. STAT. § 823.08(2)(a). And, its definition of agricultural use includes "crop or forage production." WIS. STAT. §§ 823.08(2)(b) and 91.01(2)(a)1. The statute does not include a definition of the common term "associated." Accordingly, we turn to one representative dictionary definition of "associated": "related, connected, or combined together." *See, e.g.*, *Associated*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/associated (last visited July 2, 2024). Buchholz does not dispute that Schmidt's alleged nuisance-creating farmland drainage activity was conducted to assist in crop production on Schmidt's farmland. Thus, Schmidt's farmland drainage activity was indisputably related to or connected with crop production and, therefore, it was "associated" with crop production. Applying a plain language

---

[6] The circuit court concluded that farmland drainage is not an agricultural use under the Right to Farm Law because it is not included in the statutory list of protected agricultural uses. *See* WIS. STAT. §§ 823.08(2)(b) and 91.01(2) (defining "agricultural use"). On appeal, Schmidt does not contest the court's conclusion that farmland drainage is not a protected agricultural use under the Right to Farm Law.

approach to the statutory definition of an agricultural practice as an activity "associated" with crop production, we conclude that Schmidt's alleged farmland drainage activity met that definition.

¶36 Buchholz does not engage in a plain language interpretation of the statute. Instead, he relies solely on this court's ruling in *Timm*. In that opinion, we stated that the operation of drainage ditches by the Portage County Drainage District was not an agricultural practice under the Right to Farm Law. *See Timm*, 145 Wis. 2d at 755. *Timm* does not support Buchholz's position, because *Timm* explicitly limited the scope of its discussion on this issue to nuisance suits "against drainage commissions," as opposed to those "involved in agricultural production," and did so in the context of a motion for costs. *Id.* Given those limitations, Buchholz's reliance on *Timm* fails. We now explain in more detail.

¶37 In *Timm*, the plaintiff sued the Portage County Drainage District, alleging that it created a nuisance when it removed "stop logs" from dams it operated, allegedly lowering the water level of drainage ditches behind the dams and adjacent to the Timm farm, allegedly causing "soil erosion, destruction of trees and vegetation, and decreased property and crop values." *Id.* at 746-747. The District removed the stop logs from the dams in response to complaints from other farmers that too much water was backing up behind one of the dams, resulting in wet field conditions to the detriment of crop production. *Id.* The circuit court dismissed Timm's suit. *Id.* at 746. On appeal, this court concluded that the District was immune from suit under a statute that provides immunity to certain governmental actors. *Id.* at 751.

¶38 Turning to the aspect of *Timm* most pertinent to this appeal, the District cross-appealed, arguing that it was entitled to costs and fees under WIS.

16

STAT. §§ 814.04(9) and 823.08(4) (the Right to Farm Law) (1987-88).[7] *Timm*, 145 Wis. 2d at 746. The District noted that its operation of the dams and drainage ditches, "which formed the basis for Timm's nuisance complaint, [was] associated with the agricultural use to which all the land in the drainage district is put." *Id.* at 754. This court rejected the District's argument. The court explained that statutes allowing costs are to be "strictly construed," *id.* at 754 (citing *Guthrie v. WERC*, 107 Wis. 2d 306, 317, 320 N.W.2d 213 (Ct. App. 1982), *aff'd*, 111 Wis. 2d 447, 331 N.W.2d 331 (1983)), and further explained that statutes are also to be construed "in light of [their] purpose," *Timm*, 145 Wis. 2d at 754-755 (citing *State v. Mauthe*, 123 Wis. 2d 288, 299, 366 N.W.2d 871(1984)). The court then quoted the purpose of the Right to Farm Law as set forth in WIS. STAT. § 823.08(1) (1987-88) and stated that its purpose "is to provide some protection from nuisance suits to those involved in agricultural production." *Timm*, 145 Wis. 2d at 755. The court reasoned that "[t]o extend the statute's protection to cover nuisance suits brought against drainage commissions would require us to liberally construe this costs statute," contrary to *Guthrie*, 107 Wis. 2d at 317. *Timm*, 145 Wis. 2d at

---

[7] We note that there have been certain legislative amendments to the fee-shifting aspects of the statutes since this court decided *Timm v. Portage County Drainage District*, 145 Wis. 2d 743, 429 N.W.2d 512 (Ct. App. 1988), which we now briefly summarize, but none of the changes are directly relevant to our analysis and discussion.

WIS. STAT. § 814.04(9) (1987-1988) provided that in actions in which an agricultural use or practice is alleged to be a nuisance, a successful defendant shall be allowed costs as provided in WIS. STAT. § 823.08(4) (1987-88), which allowed such a defendant to recover reasonable costs and attorney fees. Since this court decided *Timm*, 145 Wis. 2d 743, the legislature repealed § 814.04(9). 1995 Wis. Act 149, § 1. The current version of § 823.08(4) provides in part, "Notwithstanding [WIS. STAT. §] 814.04(1) and (2), the court shall award litigation expenses to the defendant in any action in which an agricultural use or agricultural practice is alleged to be a nuisance if the agricultural use or agricultural practice is not found to be a nuisance." Sec. 823.08(4)(b). *See Zink v. Khwaja*, 2000 WI App 58, ¶16, 233 Wis. 2d 691, 608 N.W.2d 394 (stating that WIS. STAT. § 823.08(4)(b) "unequivocally mandates the recovery of reasonable attorneys' fees").

755. In light of the stated purpose of the statute, which is to protect agricultural production, and the obligation to strictly construe cost-sharing statutes, the court determined that it would be inappropriate to conclude that "the operation of drainage districts *by the defendants*" was protected under the Right to Farm Law. On this basis, the court concluded that WIS. STAT. §§ 814.04(9) and 823.08(4) (1987-88) did "not allow the award of costs and attorney fees." *Timm*, 145 Wis. 2d at 755 (emphasis added).

¶39 Significantly, this court did not rule that the activity of draining farmland in and of itself could not be an agricultural practice that could be subject to protection under the Right to Farm Law, assuming that all other requirements of the statute are met. Instead, it ruled only that drainage activity by drainage districts was not protected in the context of the cost issue in that case. *Id.* In addition, the logic of the ruling in *Timm* was explicitly limited to a suit against a drainage district that was at no relevant time actively engaged in the practice of agriculture for the purpose of earning an income or making a livelihood. Instead, the district provided a service to all persons owning or using land—including but not limited to those engaged in agricultural uses and practices for an income or a livelihood—by constructing, operating, and maintaining a drainage system to serve all. *Id.* (framing the issue as whether the protection in the Right to Farm Law applies to "nuisance suits brought against drainage commissions"); *see also* WIS. STAT. § 88.21 (delineating the powers of a drainage board).

¶40 To interpret *Timm* as ruling that all farmland drainage activity is excluded from the definition of an agricultural practice under the Right to Farm Law would contravene the language in the statute referenced in that definition, WIS. STAT. § 91.01(2)(a) ("conducted for the purpose of producing an income or livelihood"). That is, this interpretation would conflict with the Right to Farm

18

Law's definition of an agricultural practice as "any activity associated with an agricultural use," WIS. STAT. § 823.08(2)(a), and with its definition of an agricultural use as any of the activities listed in § 91.01(2) when done "for the purpose of producing an income or livelihood." Secs. 823.08(2)(b) and 91.01(2)(a)1. A more limited interpretation of *Timm*, which would be consistent with the Right to Farm Law's reference to § 91.01(2), is that drainage activity by a drainage district that does not produce an income or livelihood from agricultural activities, is not an agricultural practice that could be subject to protection under the Right to Farm Law. Sec. 823.08(2)(b).

¶41 Buchholz accurately points out that the Right to Farm Law is framed in terms of a defendant's uses and activities associated with land, rather than in terms of the identity of the defendant who is engaging in those acts. However, this distinction misses the point that we just made. The Right to Farm Law requires that, to be protected from nuisance liability, the agricultural uses or practices must include the particular purpose of producing an income or livelihood. As we have explained, the *Timm* court's limited ruling denying the statute's protection to drainage by drainage districts is consistent with the language in the statute protecting only those agricultural uses and practices conducted by persons who at relevant times derived their income or livelihood from their work in agriculture.

¶42 In sum, we conclude that Schmidt's alleged nuisance-creating farmland drainage activity was an agricultural practice as that term is used in the Right to Farm Law.

*2. Whether Schmidt has met the second predicate, that the land he now owns was in agricultural use without substantial interruption before Buchholz began using his property for the farming that Schmidt's activity allegedly interfered with*

¶43 To repeat, the second predicate requires that, to be protected from a nuisance claim, the alleged nuisance-creating activity must have been conducted on (as pertinent here) land that was in consistent agricultural use before the plaintiff began the use of the property that was allegedly interfered with by that activity:

> 1. The agricultural use or agricultural practice alleged to be a nuisance is conducted on … land that was in agricultural use without substantial interruption before the plaintiff began the use of property that the plaintiff alleges was interfered with by the agricultural use or agricultural practice.

WIS. STAT. § 823.08(3)(a)1.

¶44 This provision addresses the timing between the use of the land on which the alleged nuisance-creating activity is conducted and the use by the plaintiff of the property interfered with by that activity. This provision requires that, for the Right to Farm Law to apply to such an activity, the agricultural use of the land on which the activity is conducted must precede the plaintiff's use of the allegedly affected property. That is, when considering the nuisance-creating activity, the focus is on the use of the land irrespective of who used the land at any given time; by contrast, when considering the interfered-with use, the focus is on "the plaintiff's" use of that property. The timing comparison is not between the defendant's use and the plaintiff's use, but between the land's use and the plaintiff's use.

¶45 Here, the alleged nuisance-creating activity was conducted on Schmidt's land, and allegedly interfered with Buchholz's farming of his property.

20

Thus, the issue under WIS. STAT. § 823.08(3)(a)1. is whether the land now owned by Schmidt was in agricultural use, by anyone, before Buchholz himself began farming his property. However, Schmidt does not argue that he presented evidence in the circuit court showing that his land was in agricultural use before Buchholz began farming his property. And, on our de novo review, as far as we can determine from the record, the parties failed to develop relevant evidence regarding this issue. Accordingly, Schmidt has failed to show that he met the second predicate for protection from Buchholz's nuisance claims under the Right to Farm Law.

¶46 In sum, Schmidt fails to show that the Right to Farm Law bars Buchholz's nuisance claims, and the circuit court properly denied Schmidt's motion for summary judgment seeking to dismiss those claims.

## B. Whether Buchholz is entitled to summary judgment on his claim that Schmidt breached the Drain Tile Agreement and on Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement

¶47 Schmidt argues that Buchholz is not entitled to summary judgment on his claim that Schmidt breached the Drain Tile Agreement for two reasons. First, he argues that the Drain Tile Agreement is ambiguous. Second, he argues that there are disputes of material fact as to whether Buchholz performed his obligations under the Farm Lease Agreement, insofar as it is referenced in the Drain Tile Agreement, so as to excuse Schmidt from having to perform on the Drain Tile Agreement. Schmidt also argues that, based on those same disputes of material fact, Buchholz was not entitled to summary judgment dismissing Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement. As we explain, we reject Schmidt's arguments and, accordingly, conclude that the circuit court properly granted summary judgment in Buchholz's favor on his

21

breach of contract claim and properly dismissed Schmidt's breach of contract counterclaim.

¶48  As quoted above, the Farm Lease Agreement, executed in May 2017, states in pertinent part, "I, Ben Buchholz (landowner) certify that I will rent 90 +/- tillable acres of my farm … to Steven Schmidt (operator) for cash for the crop year."  Below the parties' signatures, the following is handwritten at the bottom of the Farm Lease Agreement:

| $19,500.00 ÷ 3 Payments: | May 20th | $6,500 |
|---|---|---|
| | July 18th | $6,500 |
| | Dec. 18th | $6,500 |

¶49  Also as quoted above, the Drain Tile Agreement, executed in January 2019, states:

> I, Ben Buchholz, agree to deduct $2,000 from the 3rd payment of 2018 $6500 farm land rent to help cover [the] cost of replacing tile that was damaged on Steve Schmidt Property that drains my land.  Steve Schmidt agrees to replace the tile within one year, or owes me $2,000.
>
> Ben agrees to pay [f]or 1 12" Line, $2,000 is down payment.

¶50  Schmidt does not dispute that the first paragraph in the Drain Tile Agreement unambiguously requires that, within one year, Schmidt either replace the damaged drain tile that drained Buchholz's property and was located on Schmidt's property, or else pay Buchholz the $2,000 that Buchholz agreed to allow Schmidt to withhold from the third $6,500 rent payment that Schmidt owed Buchholz for 2018.  Nor does Schmidt dispute that he did not in fact within one year either replace the drain tile or pay the withheld $2,000 to Buchholz.

22

¶51    Rather, Schmidt argues that the second paragraph, comprising the one sentence quoted above, is ambiguous, and that the ambiguity in the second paragraph somehow excused him from performing his unambiguous obligations in the first paragraph. More specifically, Schmidt argues that it is ambiguous as to whether the $2,000 "down payment" described in the second paragraph is different from the $2,000 to be deducted from the rent payment under the first paragraph, or is for a tile different from the tile referred to in the first paragraph. Schmidt argues that this one sentence could be read to impose obligations on Buchholz that Buchholz did not perform, such as to pay costs above the $2,000 "down payment" or to construct a separate tile. Therefore, Schmidt's argument continues, Schmidt would be excused from refunding the $2,000 that he withheld from the rent that he owed Buchholz to replace the damaged drain tile that Schmidt did not replace.

¶52    However, Schmidt does not offer a reasonable, non-speculative interpretation of the Drain Tile Agreement contrary to what we conclude is the unambiguous language in its first paragraph. *See Maryland Arms*, 326 Wis. 2d 300, ¶¶44-47 (accepting tenant's reasonable interpretation, against the landlord drafter, of two sentences in an ambiguous paragraph in a lease). Moreover, Schmidt fails to explain, with citations to supporting legal authority, why he would be entitled to keep the benefit of his failure to perform under that unambiguous language.[8] We agree with the circuit court that Schmidt is unambiguously

---

[8] Schmidt cites *Ranes v. American Family Mutual Insurance Company*, 219 Wis. 2d 49, 57, 580 N.W.2d 197 (1998), in which our supreme court ruled that an insured's failure to give notice does not relieve an insurer of its obligations unless the breach is material, meaning that the insurer "was prejudiced by the lack of notice." Schmidt does not explain how this ruling, which addresses the consequences of a material breach of a contract by one party that prejudices the other party, applies to his argument about ambiguity. Nor does he identify a material breach of the Drain Tile Agreement by Buchholz that prejudiced him.

obligated under the first paragraph to, within one year, replace the damaged tile on his property that drains Buchholz's property or pay the withheld $2,000; and that he fails to point to any language in the second paragraph entitling him to retain the $2,000 when he did neither.

¶53 Separately, Schmidt argues that he could not have breached the Drain Tile Agreement by retaining the withheld $2,000 if he did not owe any rent to Buchholz. He further argues that he would not owe rent to Buchholz if Buchholz breached the Farm Lease Agreement, and that there are disputes of material fact as to whether Buchholz breached the Farm Lease Agreement. Schmidt provides no legal basis for his argument tying his failure to perform under the Drain Tile Agreement to Buchholz's alleged failure to perform under the Farm Lease Agreement. However, because Schmidt also argues that the same asserted disputes of material fact undermine Buchholz's entitlement to summary judgment dismissing Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement, we now explain why he fails to present any such disputes of material fact.

¶54 Schmidt argues that there are disputes of material fact as to whether Buchholz leased to him "90+/- acres of tillable land" (the "leased land"), as required by the Farm Lease Agreement. The parties both interpret these agreement terms as requiring that Buchholz provide at least 90 acres of "tillable land" in 2017 and 2018, and we accept their interpretation for purposes of this appeal. Schmidt defines "tillable" as "able to be planted," and argues that Buchholz breached the Farm Lease Agreement because Schmidt was not "able to" plant on all of the 90 acres in 2017 and 2018, since some areas of the leased land were "too wet to plant." Buchholz defines "tillable" as "available" to be planted, and argues that government reports that Schmidt filed and his own deposition

24

testimony establish that the leased land comprised at least 90 acres "available" for planting. We need not resolve the distinction, if any, between these two definitions, because the record establishes that Schmidt reported, in the government reports that he certified as true and accurate, and which he testified in his deposition were "correct," that he "planted" at least 90 acres of cropland on the leased land in 2017 and 2018. Schmidt fails to point to evidence on which a jury could rely to show that he planted fewer than 90 acres on the leased land, sufficient to create a genuine issue of material fact.

¶55    In the summary judgment proceedings, Buchholz produced copies of annual Reports of Commodities Farm and Tract Detail Listing that Schmidt filed with the Dodge County Farm Services Agency.[9]    At his deposition in December 2020, Schmidt testified that he signed each report, certifying "to the best of [his] knowledge" that the information on the report is "true and correct," and that "the applicable crop, type, practice and intended use *is not planted* if it is not included on the Report." (Emphasis added.) Schmidt acknowledged in his testimony that, for each of the years from 2009 to 2016, the reports show that he planted at least 90 acres on the leased land.

¶56    For each of the years 2017 and 2018, Schmidt testified that the reports show 97.84 acres of "cropland" for the leased land. Schmidt testified that he did not report any acres that he "was unable to plant" in 2017, and that the 2018 report states that he planted corn and alfalfa on 90.81 acres of the leased land in 2018. Schmidt also testified that he planted fewer than 90 acres on the leased land

---

[9] It is undisputed that Schmidt received government subsidies based on the information in these reports.

in both 2017 and 2018, but he also testified that the reports and maps that he signed and submitted showing that he planted more than 90 acres on the leased land in 2017 and 2018 were "correct." He did not explain in his testimony why he did not report that he planted fewer than 90 acres of cropland on the leased land in 2017 and 2018.

¶57 On appeal, Schmidt does not provide any reason for a jury to credit his testimony that, contrary to his certified reports that he testified were "correct," he planted fewer than 90 acres. In other words, he does not provide a basis for this court to conclude that any aspect of his deposition testimony created a genuine dispute of material fact as to whether he planted fewer than 90 acres on the leased land in 2017 and 2018.

¶58 In March 2021, approximately three months after his deposition, Schmidt submitted an affidavit in which he averred that, with certain "deductions," he was "able to successfully plant" fewer than 90 acres in 2017 and 2018. He did not explain in the affidavit why the deductions were not identified in the reports.

¶59 The circuit court rejected this affidavit as a sham affidavit. *See Yahnke v. Carson*, 2000 WI 74, ¶21, 236 Wis. 2d 257, 613 N.W.2d 102 ("[F]or purposes of evaluating motions for summary judgment …, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained."). Schmidt does not in his appellate briefing address the court's rejection of his affidavit based on the sham affidavit rule, or refer to the averments in that affidavit. Accordingly, we take him to concede that the court properly disregarded the affidavit.

26

¶60 In sum, we conclude that the circuit court properly granted summary judgment in Buchholz's favor on Buchholz's claim that Schmidt breached the Drain Tile Agreement and dismissed Schmidt's counterclaim that Buchholz breached the Farm Lease Agreement.[10]

## II. Dismissal of Schmidt's Counterclaims

¶61 WISCONSIN STAT. § 802.10(7) provides that "[v]iolations of a scheduling or pretrial order are subject to [WIS. STAT. §§] 802.05, 804.12 and 805.03." WISCONSIN STAT. § 805.03 provides in part: "[F]or failure of any party to ... obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under [§] 804.12(2)(a)." Section 804.12(2)(a)3. authorizes the court to "make such orders … as are just," including "dismissing the action or … rendering a judgment by default against the disobedient party."

¶62 Under WIS. STAT. § 805.03, circuit courts have "the authority to dismiss actions or grant default judgment when a party has interfered with … the orderly administration of justice." *East Winds Properties, LLC v. Jahnke*, 2009 WI App 125, ¶13, 320 Wis. 2d 797, 722 N.W.2d 738 (quoting *Trispel v. Haefer*,

---

[10] Schmidt also asserts that the circuit court erred when it granted Buchholz's motion for summary judgment dismissing Schmidt's counterclaim that the Drain Tile Agreement was illegal and void as against public policy. Specifically, he asserts that the Drain Tile Agreement may have resulted in negative effects on state and federally regulated water and wetland resources on Schmidt's property and "federal farm subsidies" received by Schmidt. However, despite these assertions, Schmidt neither identifies this as an issue on appeal nor does he support the assertions with relevant legal authority. Accordingly, we do not address this issue further. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (citation omitted)); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court generally will not consider arguments that are not supported by legal authority or insufficiently developed).

89 Wis. 2d 725, 731, 279 N.W.2d 242 (1979)) (internal quotations omitted). Only a finding of egregious conduct justifies such a sanction. *Id.* A party's failure to comply with a court order is egregious when there is no "'clear and justifiable excuse.'" *Industrial Roofing Servs., Inc., v. Marquardt*, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898 (citation omitted) (lead op.).

¶63 A dismissal under WIS. STAT. § 805.03 "operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order. A dismissal on the merits may be set aside by the court on the grounds specified in and in accordance with [WIS. STAT. §] 806.07." Sec. 805.03.

¶64 We review a circuit court's decision to impose the sanction of dismissal, and a court's decision on a motion for relief from judgment or order, for an erroneous exercise of discretion. *East Winds*, 320 Wis. 2d 797, ¶13 (decision to grant dismissal); *Werner v. Hendree*, 2011 WI 10, ¶59, 331 Wis. 2d 511, 795 N.W.2d 423 (decision on motion for relief). A court properly exercises its discretion "if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion." *Teubel v. Prime Dev., Inc.*, 2002 WI App 26, ¶15, 249 Wis. 2d 743, 641 N.W.2d 461. The circuit court's findings of fact will not be set aside unless those findings are "clearly erroneous." WIS. STAT. § 805.17(2). We accept inferences drawn by the court from undisputed facts so long as they are reasonable. *Teubel*, 249 Wis. 2d 743, ¶14.

*Additional Background*

¶65 In a letter dated December 15, 2021, submitted to the circuit court five days before the trial was to commence, Schmidt, pro se, requested a continuance of the trial on the ground that he had "remove[d]" his counsel for

being "incapable of handling this case." After a telephone hearing on December 16, the court issued an order acknowledging counsel's withdrawal. At a hearing on December 20, the court granted the continuance. The court noted that Schmidt had told the court that Schmidt expected to retain new counsel soon after the first of the year, and emphasized that it was important that Schmidt retain new counsel promptly, so that new counsel could be ready for a trial that would be rescheduled at a February telephone conference. The court also ordered Schmidt to pay Buchholz's costs related to the continuance, in the amount of $2,632.55. The court instructed the then unrepresented Schmidt to have his new counsel review Buchholz's itemized bill for these costs, which Buchholz's attorney said he would file, and for new counsel to contact the court "right away" with any objection. The court ordered Schmidt to "pay [the costs] or file a motion within thirty days" (the "thirty-day order").[11] The court also set a scheduling conference for February 15, 2022.

¶66 On January 24, 2022, Buchholz filed a notice and motion to dismiss Schmidt's counterclaims as a sanction for Schmidt's failure to pay Buchholz or file a motion within thirty days of the December 20, 2021 hearing.[12] The record does not reflect that Schmidt responded in any way to Buchholz's motion to dismiss. On February 10, 2022, the circuit court entered an order dismissing

---

[11] Schmidt does not challenge the circuit court's thirty-day order on appeal.

As far as we can discern from our review of the record, Buchholz did not file an itemized bill or other document regarding his costs related to the continuance. The parties did not raise this omission in the circuit court and they also do not raise it on appeal, and so we do not consider it in our analysis.

[12] We note that there is a slight discrepancy in the amount of fees identified in the attorney affidavit and in the transcript, but Schmidt does not raise any issue as to that discrepancy.

Schmidt's counterclaims with prejudice (which for ease of reading we sometimes refer to as "the sanctions order of dismissal").

¶67    Schmidt did not appear at the February 15, 2022 scheduling conference.  On that same day, Buchholz filed a notice and motion asking the circuit court to find Schmidt in contempt of court and impose additional sanctions, this time based on Schmidt's failure to appear at the scheduling conference.  The notice also indicated that the motion would be heard on March 7, 2022.

¶68    On March 4, 2022, Schmidt's new counsel filed a notice of retainer, and this counsel would represent Schmidt through trial.  On that same day, Schmidt's new counsel filed a motion asking the circuit court to dismiss the contempt motion, and seeking relief from the order dismissing Schmidt's counterclaims.  The motion was supported by an affidavit by Schmidt, in which he averred that he and his spouse had become seriously ill with COVID in January and into February 2022, which interfered with their ability to obtain new counsel.  He also averred that he had contacted at least three attorneys before retaining new counsel on March 3, 2022.  He further averred that he had tried to call in to the February 15 scheduling conference from his barn phone, but he had poor reception and by the time he successfully reached the court, ten minutes after the scheduling conference started, the scheduling conference had ended.

¶69    Also on March 4, 2022, Schmidt's counsel filed a motion to adjourn the March 7 hearing on Buchholz's motion for contempt.

¶70    The circuit court held a hearing on Buchholz's motion for contempt and Schmidt's motion for relief from the sanctions order of dismissal on June 24, 2022.  The court denied the motion for contempt based on Schmidt's averments that he tried to call in, but was too late.

¶71    As to the motion for relief, the circuit court first explained that it was bound by the transcript of the December 2021 hearing, and that there was no indication in the transcript that Schmidt was warned that his counterclaims would be dismissed if Schmidt did not pay or file a motion objecting to Buchholz's costs within thirty days.[13]    The court then found that, nevertheless, Schmidt received notice of the motion to dismiss and the proposed order of dismissal as a sanction for Schmidt's failure to comply with the thirty-day order, and that Schmidt "didn't do anything" before the court signed the dismissal order.  The court also found that it had granted Schmidt's request at the December 20, 2021 hearing for a continuance of the trial so that Schmidt could retain new counsel; that Schmidt did not ask for more time to obtain new counsel and to respond to the thirty-day order, or otherwise contact the court either before the thirty-day deadline or in response to the motion to dismiss; that Schmidt missed the February 15, 2022 scheduling conference and received the subsequently filed motion for contempt; and that Schmidt ultimately paid Buchholz but "paid it late."

¶72    The circuit court also observed that it "probably would have" ruled in favor of Schmidt if he had explained to the court his health problems before the thirty-day deadline and requested another thirty days to retain counsel and to respond to the order to pay or make a motion.  But, the court explained, it would not permit Schmidt to come in long after the fact to "und[o] everything," given the history of delays in the case, and that Schmidt could not receive the benefit of the continuance of the trial "and then not comply with what [he was] supposed to do."

---

[13] The circuit court noted that the hearing transcript did not reflect any statement that Schmidt's counterclaims would be dismissed if he failed to pay, or file a motion objecting to, Buchholz's costs.  The court made this observation because Buchholz's attorney, in his affidavit supporting the motion to dismiss, averred that the court had made this statement at the hearing.

The court concluded that it would not be fair to Buchholz to allow Schmidt "to continually adjourn [the trial] and do things late and not have to pay a penalty." The court found that Schmidt had fair notice of activities that were "on the table" for him to accomplish and he never asked for more time. The court also found that Schmidt did not have "good cause" to ignore the thirty-day order and that, therefore, dismissal of the counterclaims was warranted. Accordingly, the court denied the motion for relief.

¶73     On October 31, 2022, Schmidt filed a motion for reconsideration of the circuit court's order denying his motion for relief. The court denied the motion for reconsideration at the pre-trial hearing in November 2022, based on Schmidt's failure to present any new arguments or new facts.

*Analysis*

¶74     Schmidt argues that the circuit court erred in dismissing his counterclaims as a sanction for his failure to comply with the thirty-day order. Specifically, he argues that: the court erred by not citing WIS. STAT. § 805.03 or any other legal authority for imposing the sanction of dismissal; the court did not make the finding required by § 805.03 that Schmidt's conduct was egregious; § 805.03 does not apply because the thirty-day order was not entered as a written order; and Schmidt's due process rights were violated because Buchholz's motion

did not provide proper notice and the court entered the sanctions order of dismissal without first holding a hearing.[14]  We address each argument in turn.

¶75    Schmidt argues that the circuit court erred by not citing WIS. STAT. § 805.03 or any other legal authority for imposing the sanction of dismissal. Although the court did not specifically cite § 805.03, the record establishes that the court was exercising its authority under that statute when it dismissed Schmidt's counterclaims as a sanction.  As detailed above, the court explained why it rejected the reasons that Schmidt belatedly offered for failing to act either before the thirty-day deadline or in response to Buchholz's motion to dismiss, finding that Schmidt had not shown "good cause" for his failure to act.  In doing so, the court applied the no "clear and justifiable excuse" standard that warrants the sanction of dismissal under § 805.03, and found that Schmidt failed to meet that standard. *See Industrial Roofing Servs.*, 299 Wis. 2d 81, ¶43 (lead op.).

¶76    Schmidt also argues that the circuit court did not make a finding of egregious conduct as required under WIS. STAT. § 805.03. *See East Winds*, 320 Wis. 2d 797, ¶13.  The record refutes this contention.  As stated above, the court found that Schmidt knew there was action that he was required to take within

---

[14] We note that Schmidt's arguments are directed only at the circuit court's sanctions order of dismissal, and he does not develop separate arguments directed at the court's subsequent orders denying his motion for relief under WIS. STAT. § 806.07 and denying his motion for reconsideration.  We also observe that Schmidt did not specify in the circuit court, and does not specify on appeal, which subparagraph of § 806.07 purportedly triggered relief; nor does he on appeal address the subparagraph-specific standards that would apply to our review of the court's decision denying his § 806.07 motion.  Buchholz does not argue that we should not address Schmidt's arguments because they are directed only at the court's sanctions order of dismissal. However, to the extent that Schmidt raised arguments in support of his motion for relief from the sanctions order of dismissal that are similar to the arguments directed at that order that he makes on appeal, and because we review both decisions for an erroneous discretion (*see* ¶64 above), we proceed to address them.

thirty days of the December 20, 2021 hearing, and that he did not take that action either within the thirty days or, after that deadline passed, in response to Buchholz's motion to dismiss. When Schmidt offered reasons for his failure to act to support his motion for relief from the dismissal order, the court acknowledged that those reasons may have justified an extension of the deadline if Schmidt had communicated them to the court before the deadline or in response to Buchholz's motion to dismiss. However, the court also found that Schmidt had no "good cause" for waiting to contact the court until well after the court entered the dismissal order. While the court did not use the term "egregious," its finding that Schmidt had no "good cause" for his failure to act, along with its finding that to allow Schmidt to continually delay the proceedings "and do things late" without having to pay a penalty would be unfair to Buchholz, establish that the court implicitly and on a reasonable basis did find that Schmidt's conduct was unjustified and did determine that the conduct was egregious. *See Industrial Roofing Servs.*, 299 Wis. 2d 81, ¶43 (a party's failure to comply with a court order is egregious when there is no "'clear and justifiable excuse'") (citation omitted) (lead op.).

¶77 While Schmidt would characterize his conduct differently, he does not show that the circuit court's factual findings stated above are clearly erroneous. In light of the court's factual findings, and the need of circuit courts to be able to control their calendars to ensure "the orderly administration of justice," *Trispel*, 89 Wis. 2d at 731, we cannot say that the circuit court erroneously exercised its discretion when it implicitly determined that Schmidt's noncompliance with the court's thirty-day order, and continued inaction until well after the court entered the dismissal order, were egregious. *See Industrial*

*Roofing Servs.*, 299 Wis. 2d 81, ¶43 (dismissal warranted when failure to act was "'extreme, substantial, and persistent'") (quoted source omitted) (lead op.).

¶78 Schmidt also argues that WIS. STAT. § 805.03 does not apply inasmuch as he was not required to comply with the circuit court's thirty-day order because it was not a written order signed by the court. Schmidt cites WIS. STAT. § 807.11, which states, "An order is rendered when it is signed by the judge." Sec. 807.11(1). However, Schmidt cites no case law to support the proposition that an order that is not "rendered" under § 807.11 does not bind the parties. Accordingly, we do not further consider this proposition. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (citation omitted)).

¶79 Schmidt also argues that his due process rights were violated because Buchholz's motion did not provide proper notice and the circuit court entered the sanctions order of dismissal without first holding a hearing. As to the issue of notice, Schmidt asserts that Buchholz's motion was insufficient to provide proper notice because "it is the government's responsibility to provide notice, not a party's." We reject this assertion because it is conclusory and not supported by legal authority. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (we do not address arguments that are conclusory and insufficiently developed). Schmidt also asserts that Buchholz's motion did not provide proper notice "of what was at stake," because Buchholz also filed other documents. We reject this assertion because it is conclusory and not supported by references to the record, and also because Schmidt does not explain why this shows that the circuit court

erred in rejecting his reasons for his inaction. *See* ***State v. McMorris***, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record").

¶80     Schmidt also suggests he did not have sufficient notice that his counterclaims would be dismissed if he did not comply with the thirty-day order because, in the absence of a written order, Schmidt had to rely his memory. However, he fails to show that the circuit court's findings on the issue of notice are clearly erroneous. The record shows that Schmidt was present at the hearing during which the court orally issued the thirty-day order. The court found that Schmidt failed to contact the court before the thirty-day deadline to ask for more time to obtain counsel, to respond to the order, and to explain the reasons why more time was needed. The court also found that, after the deadline passed, Schmidt received Buchholz's motion to dismiss Schmidt's counterclaims as a sanction for Schmidt's failure to comply with the order. Further, the court found that Schmidt failed at that point, or thereafter, to contact the court seeking more time in response to Buchholz's motion to dismiss. These findings establish that Schmidt had ample notice at the December 2021 hearing that he had thirty days to pay or file a motion in response to the order to pay and further establish that he had ample notice, upon receipt of Buchholz's motion after the thirty-day deadline had passed, that if he still did not act his counterclaims could be dismissed. Accordingly, he fails to show that the court erroneously found that he had sufficient notice.

¶81     Schmidt also asserts that the circuit court violated his right to due process when it issued the sanctions order of dismissal without a hearing. This is

also a conclusory assertion. Further, it disregards the hearing that was held in response to Schmidt's motion for relief from the sanctions order of dismissal. Beyond all that, Buchholz's motion asked the court to issue the sanctions order of dismissal either after a hearing, or "as decided by the court on the basis of the supporting papers of the movant," and Schmidt did not respond to the motion. For all these reasons, Schmidt fails to show that the court violated his due process rights when it issued the sanctions order of dismissal.

¶82 In sum, the record shows that the circuit court examined the relevant facts and applied the relevant law to reach a reasonable determination when it issued the sanctions order of dismissal. Accordingly, we conclude that the court properly exercised its discretion in dismissing Schmidt's counterclaims as a sanction for his failure to comply with the court's thirty-day order.[15]

### III. Whether the Drainage Easement Order incorporated in the judgment exceeds the scope of the jury's verdict on the prescriptive easement

¶83 After the jury returned its verdict on the claims by Buchholz that went to trial, the circuit court entered a judgment that incorporates a Drainage Easement Order. Schmidt argues that two terms must be removed from the order because they do not "conform with" the jury's verdict finding that Buchholz holds a prescriptive easement over the drain tile on Schmidt's property. We understand

---

[15] Schmidt also argues that the circuit court in an earlier order erroneously denied his motion in limine seeking permission to present at trial his evidence of damages related to his remaining counterclaims based on his failure to comply with the court's scheduling order and Buchholz's discovery requests. Our conclusion affirming the court's subsequent dismissal of all of Schmidt's remaining counterclaims is dispositive of Schmidt's appeal as to those counterclaims. Accordingly, we do not address his challenge to the court's earlier order excluding Schmidt's evidence of damages on those counterclaims. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Schmidt to argue that these two terms of the order exceed the scope of the easement found by the jury. We first summarize pertinent legal principles and additional background, and then address each term in turn.

¶84 "An easement 'is a permanent interest in another's land, with a right to enjoy it fully and without obstruction.'" *Konneker v. Romano*, 2010 WI 65, ¶25, 326 Wis. 2d 268, 785 N.W.2d 432 (citation omitted). "It is a liberty, privilege, or advantage in lands, without profit, and existing distinct from the ownership of the land. An easement creates two distinct property interests—the dominant estate, which enjoys the privileges as to other land granted by an easement, and the servient estate, which permits the exercise of those privileges." *AKG Real Est., LLC v. Kosterman*, 2006 WI 106, ¶3, 296 Wis. 2d 1, 717 N.W.2d 835 (citations omitted).

¶85 Here, Buchholz owns the dominant estate, as the holder of the prescriptive easement over the drain tile on Schmidt's property, and Schmidt owns the servient estate, as the owner of the property on which the prescriptive easement is located.

¶86 "The 'dominant estate' enjoys the privileges granted by the easement, and the 'servient estate' permits the exercise of those privileges." *Konneker*, 326 Wis. 2d 268, ¶25 (citing *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 785 N.W.2d 432 (Ct. App. 1997)). A servient estate cannot by affirmative act interfere with the dominant estate's use of the easement. *Koch v. Hustis*, 113 Wis. 599, 604, 87 N.W. 834 (1907); *Hunter v. Keys*, 229 Wis. 2d 710, 716, 600 N.W.2d 269 (Ct. App. 1999) ("The owner of the servient estate may not intrude into the easement in such a way as to interfere with the dominant estate's easement rights."); *see also Konneker*, 326 Wis. 2d 268, ¶25 (a prescriptive easement grants

the dominant estate holder a permanent interest to use another's land without obstruction). However, the privileges granted to the dominant estate are not limitless: "As a general proposition, the owner of the easement upon another's land is bound to make all necessary repairs …. The owner of the servient estate is not bound to make repairs in the absence of an agreement so to do." *Koch*, 113 Wis. at 604.

¶87 "[T]he scope of a prescriptive easement is determined by the scope of the use giving rise to the easement. However, because no use can ever be exactly duplicated, the use giving rise to a prescriptive easement determines only the general outlines of the easement, rather than the minute details of the interest." *Widell v. Tollefson*, 158 Wis. 2d 674, 686, 462 N.W.2d 910 (Ct. App. 1990) (citation omitted). A party's easement rights are confined to a reasonable use of the way in which the party had acquired rights by prescription, "'in view of all the circumstances of the case and the use then and theretofore made of the premises affected by it.'" *Widell*, 158 Wis. 2d at 686-87 (Ct. App. 1990) (citation omitted).

¶88 Schmidt asserts without citation to legal authority that our review of the issue of whether the order exceeds the scope of the verdict is de novo, and Buchholz does not address the standard of review. We consider persuasive case law stating that the determination of the "minute details" of a prescriptive easement involves an exercise of the circuit court's discretion, based on its review of all of the circumstances of the case. *See SWS, LLC v. Weynand*, No. 2009AP2308, unpublished slip op. at ¶¶51-52 (WI App Feb. 17, 2011) (reviewing for erroneous exercise of discretion circuit court's redrawing location

of easement based on pattern of use and condition of property).[16]  In other words, when a jury finds an easement and a legal document setting forth the details is needed, the court has discretion to craft the legal document setting forth the details of the easement as long as the details are consistent with the jury verdict. Therefore, we review whether the court "examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion."  *Teubel*, 249 Wis. 2d 743, ¶15.

¶89     As we now proceed to explain, Buchholz does not point to any portion of the record showing that the circuit court in fact exercised its discretion as to the challenged terms, or to any evidence on which the court could rely that would support a discretionary determination.

¶90     Here, the jury found that Buchholz established all of the elements of a prescriptive easement over the "drainage tile" on Schmidt's property.[17]  That finding is not challenged on appeal.

¶91     After the jury entered its verdict, Buchholz submitted a proposed Drainage Easement Order, in which the "drainage tile" referenced in the verdict is called the "Drainage System."  After hearing Schmidt's pro se objections to the proposed order, the circuit court issued the order as proposed.

---

[16] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

[17] A prescriptive easement is established when the use of another's land satisfies four elements:  (1) adverse use that is hostile and inconsistent with the exercise of the titleholder's possessive rights; (2) which is visible, open, and notorious; (3) under an open claim of right; and (4) continuous and uninterrupted for a period of twenty years.  *Mushel v. Molitor*, 123 Wis. 2d 136, 144, 365 N.W.2d 622 (1985).

¶92    The Drainage Easement Order provides that, "Buchholz may install, repair, maintain or replace an agricultural drainage tile line, to drain storm water from the Buchholz Parcel and the Schmidt Parcel to a point of discharge along the south end of the Schmidt Parcel (the 'Drainage System')."   The order also provides that, pursuant to the jury verdict, the circuit court "orders an easement created over, under and across that part of the Schmidt Parcel within which the Drainage System will be located, and to provide for the operation and maintenance of the Drainage System."   The order further provides that "Buchholz shall have primary responsibility for all maintenance, inspection, repair and replacement of the Drainage System."   In addition, the order contains the two terms challenged by Schmidt on appeal, which require that Schmidt:  (1) pay all costs associated with the construction, maintenance, and repair of the drain tile; and (2) refrain from building or planting on the easement without Buchholz's written consent.

¶93    As stated, Schmidt argues that these two terms exceed the scope of the special verdict on this issue.  Specifically, Schmidt notes that the jury found only that the evidence proved all of the elements of a prescriptive easement in favor of Buchholz over the drain tile on Schmidt's property.  Schmidt argues that these two terms give Buchholz "more than what the jury awarded" him.

¶94    The first term challenged by Schmidt states, "Schmidt shall be solely responsible for all costs incurred with respect to the construction, maintenance, inspection, repair, and replacement of the Drainage System and all components thereof."  This makes Schmidt responsible for all of the costs that Buchholz will incur in using his easement for a "Drainage System" that Buchholz may "install, maintain, or replace" on Schmidt's property.  Buchholz cites no legal basis for this term.  We conclude that Buchholz's argument that imposing that responsibility on Schmidt is inherent to the prescriptive easement found by the jury, would be akin

to asserting that an easement holder may require that the property owner pay for the road that the easement holder builds and uses over the owner's property merely by virtue of the existence of the easement. The law appears to be to the contrary. *See* ***Koch***, 113 Wis. at 604 ("[T]he owner of an easement upon another's land is bound to make all necessary repairs …. The owner of the servient estate is not bound to make repairs in the absence of an agreement to do so.").

¶95 Nor does Buchholz point to any evidentiary support for this term. Buchholz does not cite, and our review of the record does not reveal, evidence of an agreement by the parties that addresses their financial obligations regarding the easement. *See **id.*** (explaining that an agreement is required to shift the burden of maintenance away from the dominant estate).

¶96 Buchholz argues that this term is necessary because Schmidt "disconnected" the damaged drain tile in 2019. However, while Buchholz may have sought to (and did) recover damages from Schmidt in support of his trespass and nuisance claims based on that conduct, Buchholz does not cite legal authority supporting the proposition that such conduct authorizes the circuit to order, *as part of the easement*, that Schmidt be solely financially responsible for Buchholz's beneficial use of the easement. Buchholz also does not cite record evidence showing that the circuit court considered such conduct, or for that matter any other facts, in including this term in the easement order.

¶97 The second term Schmidt challenges provides, "Schmidt shall not construct any improvements (including buildings, concrete structures, or other permanent structures), or plant any trees or shrubs, within the Drainage System Easement Area, without the prior written consent of Buchholz." Schmidt argues that this term also exceeds the scope of the prescriptive easement found by the

jury, and that any such arrangements should have been negotiated between the parties. In response, Buchholz asserts that, if Schmidt were permitted to build and plant on the area covered by the "Drainage System" easement, "it would defeat the purpose of the easement by impacting [Buchholz's] ability to drain [Buchholz's] land." However, Buchholz points to no evidence presented at trial that would support this conclusory assertion. The law requires only that Schmidt cannot build or plant within the easement area in such a way as to interfere with Buchholz's use of what the jury here referred to as the drainage tile. *See Hunter*, 229 Wis. 2d at 717 (stating that the owner of the servient estate may use the land in such a fashion as the owner pleases as long as the use does not interfere with the purpose for which the easement was created). Absent the identification of any evidence on which the circuit court could rely to show that Buchholz's prior consent is reasonably required to prevent such interference, Buchholz fails to rebut Schmidt's argument that this requirement is not within the scope of the easement found by the jury.

¶98     In sum, we conclude that the circuit court erroneously included the two challenged terms in the Drainage Easement Order, and we remand to the court with directions to enter an amended Drainage Easement Order that does not include these two terms.

## CONCLUSION

¶99     For the reasons above, we conclude that the circuit court properly denied Schmidt's motion for summary judgment seeking to dismiss Buchholz's nuisance claims based on the Right to Farm Law, properly granted Buchholz's motion for summary judgment in his favor on his breach of contract claim and dismissing Schmidt's breach of contract counterclaim, and properly granted

Buchholz's motion to dismiss Schmidt's counterclaims as a sanction for Schmidt's failure to comply with a court order. We also conclude that the court erroneously included in the Drainage Easement Order that was incorporated in the judgment two terms that exceed the scope of the jury's verdict on Buchholz's prescriptive easement claim. Accordingly, we affirm in part, reverse in part, and remand with directions to enter an amended Drainage Easement Order that does not include those terms.

¶100 Neither party shall receive appellate costs. *See* WIS. STAT. RULE 809.25(1).

*By the Court.*—Judgment affirmed in part; reversed in part, and cause remanded with directions.

Recommended for publication in the official reports.